# SMITH *v.* GILMORE.

PRACTICE; REMEDIES, CHOICE OF; ELECTION.

If after a conditional sale is made of a piano, the vendee before the purchase price is fully paid dies, and at public auction by the collectors of her estate the piano is sold to one who subsequently on demand refuses to surrender it to the original vendor or to pay the balance of the purchase price, an application to the Probate Court by the original vendor to compel the collectors to pay such balance of the purchase price will, although refused, be such an election of remedies as will preclude him from recovering the piano by replevin from the purchaser at the auction.

No. 494. Submitted October 25, 1895. Decided November 4, 1895.

HEARING on an appeal by the plaintiff from a judgment on verdict in an action of replevin. *Affirmed.*

The COURT in its opinion stated the case as follows:

This is an action of replevin for the recovery of a piano. The bill of exceptions shows the following facts: The appellant, Freeborn G. Smith, who was plaintiff below, delivered the piano to Estelle Horton, October 6, 1892, under the following contract, which was signed by both parties:

" This conditional contract, made in duplicate this 6th day of October, in the year 1892, between Freeborn G. Smith, of Brooklyn, New York, party hereto of the first part, and Estelle Horton of 401 13— N. W., Washington, D. C., party hereto of the second part witnesseth, that the said party of the second part is desirous of purchasing from the party hereto of the first part a Bradbury piano manufactured by F. G. Smith, being number 24,225, style 7, wal. up't and valued at five hundred dollars, which instrument the party hereto of the first part agrees to sell upon the following terms and conditions, to which said parties of the first and second parts, respectively, do hereby declare their as-

sent, and by which they hereby acknowledge themselves bound by the execution of these presents, namely:

"*First.* The payment of the whole stipulated price of the said instrument is a condition precedent to the vesting of the title to the said instrument in the said party of the second part; and upon the payment of the said price in full, and not before, the said title shall vest as aforesaid.

"*Second.* The said instrument is to be paid for as follows: Upon the signing of this contract, the said party of the second part is to be allowed the sum of $150, for Haines sq. piano in exchange, the receipt of which is hereby acknowledged, and the balance of the purchase money is to be paid in the following instalments, $25 down, and $10 or more per month, from the date hereof, until the entire price of the said instrument is fully paid, at which time the party hereto of the first part will give a certificate of sale to the said party of the second part, and thereupon, and not before, said instrument shall become the property of the said party of the second part.

"*Third.* Should a default in the payment of any of the stipulated monthly instalments occur, or should the said party of the second part with the possession of the said instrument or remove or permit it to be removed from the premises now occupied by her without written consent of the party of the first part first had and obtained, then said party of the first part shall have the right, either personally or by his agent, to at once reclaim and take possession of the said instrument wherever found, and such retaking of possession shall not subject him to any legal proceedings, civil or criminal. And it is expressly understood and agreed, that whenever the said party of the first part shall elect to exercise such right of retaking herein stipulated for, the possession of said instrument shall be delivered peaceably up to him, or his agent.

"*Fourth.* The proposed sale of the said instrument is purely conditional. Any and all instalments or payments which shall have been made at the time of default and retak-

ing aforesaid, it is stipulated and agreed, shall be retained by said party of the first part as an equivalent for the use of said instrument while in the possession of said party of the second part."

Plaintiff received the Haines piano mentioned in the contract, the payment of $25 cash, and four of the monthly instalments of $10 each.

Estelle Horton died some time in 1893, leaving a will which became the subject of contest in the proper court of the District and the proceedings in which remain unsettled. Collectors of her estate were appointed, pending the contest, and plaintiff placed the contract in the hands of an attorney, who presented it to the said collectors, who informed him that nothing could be done about the matter until a conclusion of the contest should be reached. Under an order of the orphans' court, passed December 15, 1893, the collectors sold all the household property of decedent, including the piano, to the appellee, Willie Gilmore, for the sum of $1,925, which she paid to them.

The piano was valued in said sale at $500. Plaintiff called to see the defendant (appellee here) about the piano, and was informed by her that she had bought and paid for the piano, and that he could not get it without proceeding at law.

Thereafter, about March 19, 1894, plaintiff presented the following petition to the orphans' court, concerning his said claim, to which he made oath:

" In the Supreme Court of the District of Columbia, Special Term for Probate Business.

" In the Matter of ANNIE E. NORTHCUTT, Otherwise Known as ESTELLE HORTON.    No. 5451.

" *Petition of Freeborn G. Smith for payment of Debt.*

" Your petitioner, Freeborn G. Smith, shows to the court as follows:

" (1) That he is a manufacturer of and dealer in pianos, and the proprietor of a store or ware-room for the sale thereof in the city of Washington.

" (2) That heretofore, to wit, on the sixth day of October, A. D. 1892, the above-named decedent purchased of your petitioner a piano manufactured by him, being a Bradbury, ' No. 24,225, style 7, walnut, upright, for five hundred (500) dollars, one hundred and fifty (150) dollars thereof being paid by delivery to petitioner of a Haines square piano, valued at that sum, and twenty-five (25) dollars in money being paid at the time of the transaction, it being agreed between the petitioner and the said decedent that the remainder of the purchase-money should be paid in monthly instalments of ten (10) dollars or more; that the payment of the whole stipulated price of the instrument should be a condition precedent to the vesting of the title thereof in said decedent; all of which will more fully appear by reference to the original agreement of sale annexed, marked Exhibit A, and prayed to be read as part of this petition.

" (3) That at the time of her death said decedent had paid in money but sixty-five (65) dollars, inclusive of the twenty-five (25) dollars of the said purchase-money unpaid.

" (4) Your petitioner has recently learned that under the authority of an order of this court passed in this cause on the 15th day of December, 1893, the collectors in this case have sold to Willie Gilmore, for nineteen hundred and twenty-five (1,925) dollars, all the personal property, except wearing apparel, contained in the dwelling house in which the above-named decedent lived at the time of her death, among which personal property was the said piano.

" (5) Your petitioner therefore prays that the said collectors may be authorized and directed by an order of this honorable court to pay to your petitioner, out of the proceeds of the said sale, the sum of two hundred and eighty-five (285) dollars remaining due and unpaid upon the said purchase of said piano.

" FREEBORN G. SMITH,

" Per WILLIAM P. VAN WICKLE,

" *Manager.*"

The orphans' court refused to order the collectors to pay for the piano, as prayed, on the ground that there was no authority therefor; the collectors being merely collectors and custodians of the estate pending the contest of the will.

The present suit was begun April 13, 1894. The court, on the trial, treated the contract as a conditional sale, but submitted to the determination of the jury, "whether the action of the plaintiff, in applying to the orphans' court, by his petition to said court, was consistent with an intention upon his part to retain the title to the piano until the same was paid for; or whether such petition was an election by him to treat the sale as actual and unconditional; and that if, in their opinion, the plaintiff's said action was such an election, their verdict should be for the defendant." The jury were further charged "that the plaintiff had the right to treat the sale of the said piano as absolute, and that the only question in the case was whether his application to the orphans' court was an election to do so; that if he recognized the sale as passing the title, and the proceeds of the sale by the collectors as subject to the court's disposition, he might be regarded as treating his right as a right to the money only; that if presenting the said petition to the orphans' court was, in their opinion, cansistent with an intention to retain the title to the piano, their verdict should be for the plaintiff." The jury, having found for the defendant, the plaintiff has appealed, assigning error upon exceptions taken to the forgoing charge.

*Mr. J. J. Darlington* for the appellant:

1. The contract of purchase expressly provided that no title passed to the purchaser until payment in full of the purchase money, and that the appellant might retake the instrument at any time in case of default in the stipulated monthly instalments. This was a valid provision of the contract, and, under it, the right to retake the instrument in case of default is unquestionable. *Harkness* v. *Russell,* 118 U. S. 663;

*Sanders & Stayman* v. *Wilson*, 19 D. C. 555. There being no controversy over the fact that the contract was as stated, and that there had long been default under it, the appellant was, as a matter of law, entitled to a verdict, and the court should have so instructed the jury.

2. Appellant's petition to the orphans' court was a written instrument, the construction of which was exclusively a question of law. If it can be legally construed as a waiver of the terms of the contract, or as an election by him to treat the sale as unconditional, and if it ought to be so construed, it was the province of the court, and not of the jury, so to construe it. It was manifest error to leave the jury to *guess* at the intent of a written document, even if there were room, upon its face, to raise any question as to such intent.

That there was absolutely nothing in the petition to the orphans' court to justify a finding, by either court or jury, that the appellant intended to waive the security for his debt which the contract of sale gave him, whether the prayer of his petition was granted or not, is obvious without argument. The petition particularizes the fact that, under the contract, the payment of the whole stipulated price of the instrument was a condition precedent to the vesting of the title in the purchaser, and the conditional contract was filed as an exhibit, to be read as part of the petition. It thereupon simply stated the default, the fact that the collectors had sold all the personal property in the dwelling house of the purchaser, including the piano, and prayed that, out of the $500.00 which they had received for it, they might be authorized to pay to the appellant the $285.00 which remained due and unpaid of the purchase money.

*Mr. J. J. Johnson* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

In dealing with this contract, a court of equity, invested with the power to look beyond the mere form into the sub-

stance of the instrument in order to discover its real mean-
ing, would be strongly inclined to treat the sale of the
piano as made with the reservation of a lien for the pur-
chase money, notwithstanding the recitals that " this is a
conditional contract," or that the " proposed sale is purely
conditional." In a case at law, involving the construction
of a contract of the same general nature, it was said by the
Supreme Court of the United States that the true construc-
tion " is not to be found in any name which the parties may
have given to the instrument, and not alone in any particu-
lar provisions it contains, disconnected from all others, but
in the ruling intention of the parties, gathered from all the
language they have used." *Herryford* v. *Davis*, 102 U. S.
235, 244. And if this were a proceeding in equity involv-
ing the right of the vendor, not only to reclaim the instru-
ment, but also to retain as forfeited, the payments that have
been made under the contract, we should have no hesita-
tion in construing the instrument so as to deny his right to
them both.

But, in this proceeding, we must, as the trial justice evi-
dently did, regard the right of the plaintiff to make a con-
ditional sale, as contradistinguished from a sale with reser-
vation of a lien that must be recorded under the statute, as
settled by the Supreme Court of the United States in *Hark-
ness* v. *Russell*, 118 U. S. 663.

The single question, then, to be decided is: Shall the pro-
ceeding in the orphans' court to collect the balance of the
purchase money be considered an election to collect a debt
only, and an abandonment of the claim of title to the piano
itself?

The doctrine is well settled that where one has his choice
of two inconsistent remedies, he may be put to, and made
to abide, his election between them. The election, when
made, with full knowledge of the situation, is irrevocable.
*Rabb* v. *Vos*, 155 U. S. 13, 43. "A man may not take
contradictory positions; and where he has a right to choose
one of two modes of redress, and the two are so inconsis-

tent that the assertion of one involves the negation or re-
pudiation of the other, his deliberate and settled choice of
one with knowledge, or the means of knowledge, of such
facts as would authorize a resort to each, will preclude him
from going back and electing again." *Thompson* v. *Howard*,
31 Mich. 309–312. In that case, the father, whose minor
son had been enticed away from him by the defendant, first
sued in *assumpsit* for the value of the son's services. He
then withdrew that suit, and brought his action for dam-
ages for enticing his son away and harboring him, which
was denied him because he had made his election between
his remedies by bringing the first suit, and the result was
not affected by his failure to prosecute it to a final determi-
nation.

The appellant does not dispute the soundness of this doc-
trine of election between remedies, but denies its applica-
bility to the facts of this case. His contention is, that both
proceedings, the one in the orphans' court and the one
taken here, are in affirmance of the contract as made, and
therefore not inconsistent with each other. *Connihan* v.
*Thompson*, 111 Mass. 270, is cited as directly in point. In
that case, the plaintiff first brought suit for damages for
the breach of a contract for the purchase of land, and at-
tached the land. He then brought an action to enforce
specific performance of the contract, and discontinued the
first suit. In reply to the objection that he had exercised
his election between remedies, in bringing the action for the
breach of the contract, the court held that there was no
inconsistency between the two, "because both were in
affirmance of the contract."

Without intending either to approve the decision of that
case, or to question the soundness of the distinction taken
between the rule of its assertion and that laid down in
*Butler* v. *Hildreth*, 5 Metc. 49, we are of the opinion that
it can not be made to extend to the facts of this case. We
agree with counsel that the mere demand of the balance of
the purchase money, or notice of willingness to receive it,

instead of taking the piano itself, given to the vendee, or
the purchaser under her, would not be regarded as the ex-
ercise of election.    Such demand would be in accordance
with equity and good conscience.    But when the holder
and claimant refused either to pay for or to surrender the
piano, he had two legal remedies open to his pursuit.    One
was to recover the unpaid balance of the purchase money
of the estate of the deceased vendee.    The other was to
recover the property itself of the defendant.

Whilst he might, in strictness of law, under the express
terms of the contract, retain the payments that had been
made, without accounting therefor, and retake the property
because he had not parted with the title, he certainly could
not reclaim it and recover the balance due.    The bringing
of the suit to recover this money as due was necessarily an
abandonment of his claim of title.

This view, we think, is in complete accord with the doc-
trine of a later case in the same court, in the opinion in
which there is no reference to *Connihan* v. *Thompson, supra,*
as being in opposition.    The contract in that case purported
to be one of hiring by A, who delivered the goods to B.
B was to pay certain sums per month as rent, and the "bal-
ance" in instalments until paid in full.    Title was to re-
main in A and not to vest in B until all payments were
made, and all conditions performed.    B made default, and
A sued him for the "rent" and attached his property by
trustee process.    Pending that suit, A took possession of
the property, but prosecuted the suit to judgment.    He
afterwards collected a very small sum from the trustee,
which was a credit on the judgment.    B then sued A for
the conversion of the goods, and the court held that the
suit could be maintained, because A, having elected to
treat the transaction as a sale by his suit, the title to the
goods at once passed to B.    The court said it was a mis-
nomer to call the stipulated payments "rent;" that B was
bound by the contract, at all events, to pay for the goods,
and upon the completion of the payments the title was to

vest in him, and A could not exact payment in full and take the property too. If he reclaimed the property, it must be on the ground that he elected to treat the transaction as no sale. If he brought an action for the price he thereby affirmed the sale. *Bailey* v. *Hervey*, 135 Mass. 172.

It is quite generally held that where one has parted with property through fraudulent representations, he has his option to declare it no sale and recover his goods, or to affirm the sale and recover their value ; and if he elect between his remedies, and commence proceedings, with knowledge of all the facts, he cannot afterwards, to suit his convenience or to serve his interest, withdraw therefrom and pursue the other. *Butler* v. *Hildreth*, 5 Metc. 49; *Conrow* v. *Little*, 115 N. Y. 387; *Bulkley* v. *Morgan*, 46 Conn. 393 ; *Farwell* v. *Myers*, 59 Mich. 179.

Though there is a difference in particular facts between those cases and the one at bar, the governing principle is identical. It is, that the seller cannot have his goods and the purchase price also. He must relinquish the one right or the other. If he would have his goods, he must declare that he never sold them in fact, never parted with his title, and thereby relinquish all claim to the unpaid purchase money. If he would have payment of the purchase money, he must affirm the sale and waive the condition upon which the delivery was made.

There were some other circumstances shown in the case, which, though not called specially to the attention of the jury, point to the conclusion that plaintiff knowingly and deliberately elected to claim the purchase price of his piano rather than the instrument itself. He knew that his vendee was dead, and that the piano had passed into the possession of the collectors of her estate, pending the contest of her will. He saw the collectors, and informed them of his demand and exhibited the contract, and was told they could do nothing pending the contest of the will. He made no effort to retake his property, but stood by and let it be sold to defendant, who had no notice of any defect

in the title. Believing the estate of the deceased vendee solvent, as it apparently is, he petitioned the orphans' court for payment of the unpaid balance of the purchase price. This petition was not denied because of the want of merit or legality in the demand, but solely because, under the laws in force in this jurisdiction, the collectors of an estate, pending an application for the probate of a will, or the grant of letters of administration, have no power beyond that of collection and preservation, and the establishment of demands against the estate must await the appointment and qualification of the regular legal representatives.

We are clearly of the opinion that the charge of the court followed the law of the case. As the evidence of plaintiff's election was contained in his petition to the orphans' court and other evidence offered by himself consistent therewith, the court might well have directed the jury to return a verdict for the defendant. The plaintiff, however, cannot complain that the issue was submitted to the determination of the jury. They could properly find but one verdict; any other must necessarily have been set aside.

We find no error in the record, and the judgment *must be affirmed, with costs to the appellee.*