M. I. WILCOX COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7884.   Promulgated August 1, 1927.

Where a close corporation, desirous of acquiring additional capital, purports to purchase Liberty bonds from its stockholders at par for preferred stock, with the expectation of selling such bonds to obtain the needed capital, and the bonds are immediately sold, as contemplated, for less than par, the transaction amounts to a process of acquiring capital and does not constitute a purchase and sale of bonds by the corporation at a loss; and the invested capital allowable for such bonds, being measured by their value, was their actual value presumptively established by their selling price.

*Sigmund Sanger, Esq.*, for the petitioner.
*Robert A. Littleton, Esq.*, for the respondent.

This proceeding involves a deficiency in income and profits tax for the fiscal taxable year ending August 31, 1920, in the amount of $4,311.93. This deficiency arises (1) from the refusal of the

respondent to permit petitioner to take as a deduction an alleged loss of $8,147.04, arising from the sale by it of certain Liberty bonds, and (2) in decreasing its reported invested capital by the amount of $8,147.04, which is precisely the amount of the alleged loss.

FINDINGS OF FACT.

Petitioner is a corporation, organized under the laws of Ohio, with its principal place of business at 210–216 Water Street, Toledo. At the times herein mentioned, petitioner was a close corporation and the stock was held by five or six individuals. In the year 1918, petitioner purchased United States Liberty bonds to the extent of $65,000. On October 7, 1918, the following action was taken by petitioner's board of directors:

C. J. Stanley then offered a motion, seconded by F. F. Ingalls, that a dividend of 50% of the entire capital stock of the company, amounting to $62,500, being duly earned, be declared out of the surplus profits of the company, and paid to all stockholders of record. Said dividend to be paid in U. S. bonds of the 4th Liberty Loan issue.

This motion was adopted without debate, and the Treasurer directed to pay said dividend out of the surplus of the Company on or before February 1st, 1919, on delivery of Bonds.

On April 12, 1919, in pursuance of the above resolution, the corporation delivered to the following stockholders, United States Liberty bonds of the par value set opposite their names:

| | |
|---|---:|
| O. S. Wilcox | $27,500 |
| A. J. Wilcox | 10,000 |
| C. J. Stanley | 13,750 |
| F. F. Ingalls | 10,000 |
| H. W. Wilcox | 1,250 |
| | 62,500 |

In April, 1920, the stockholders of petitioner were O. S. Wilcox, A. J. Wilcox, C. J. Stanley, F. F. Ingalls, and R. B. Crane. Crane held one qualifying share, which in fact belonged to O. S. Wilcox. On April 6, 1920, at 3 p. m., a special meeting of the board of directors of petitioner was held, at which all directors were present. At that meeting, the following action was taken:

Mr. O. S. Wilcox, President, stated that the meeting was called for the purpose of considering the matter of purchase by the M. I. Wilcox Company of Liberty Bonds now held by the stockholders of the company. He stated that on account of expansion due to the increase of business, it is necessary to put additional money into the business; that for this reason the company is about to issue $100,000.00 of preferred stock.

Mr. C. J. Stanley then offered the following:

RESOLVED: That the M. I. Wilcox Company purchase at their par value Liberty Bonds to the amount of $61,700.00, now held by the stockholders of the company. (These bonds representing dividends heretofore declared by the

company, payable in Liberty Bonds at par.)   That the company then convert these bonds into cash, using the money to meet the demands of business and pay the stockholders in preferred stock certificates, when issued.

Mr. A. J. Wilcox moved the adoption of this resolution.  The motion duly seconded, was unanimously carried, and the resolution adopted.

In pursuance to the above resolution, on April 16, 1920, the following stockholders delivered to F. F. Ingalls, who was then secretary and assistant treasurer of petitioner corporation, United States Liberty bonds of the par value set opposite their respective names:

| | |
|---|---:|
| O. S. Wilcox | $28,700 |
| A. J. Wilcox | 10,000 |
| C. J. Stanley | 13,000 |

F. F. Ingalls took from his lock box United States Liberty bonds of the par value of $10,000, and brought them to the office.  When F. F. Ingalls had collected the above bonds, which, together with his own, made a total par value of $61,700, he on the same day sold the bonds to the Citizens Security Co. for the sum of $53,552.96, which amount was on the same day entered on the books to the credit of petitioner.   Each of the above parties had drawing accounts and on the same day, April 16, 1920, the drawing account of each of the stockholders was credited with the amount set opposite their respective names:

| | |
|---|---:|
| O. S. Wilcox | $28,700 |
| A. J. Wilcox | 10,000 |
| C. J. Stanley | 13,000 |
| F. F. Ingalls | 10,000 |
| | 61,700 |

Thereupon petitioner began to take proper steps, under the law of Ohio, authorizing it to issue $100,000 par value of preferred stock.   On May 12, 1920, petitioner issued to the following persons its preferred stock of the par value set opposite their respective names:

| | |
|---|---:|
| O. S. Wilcox | $28,000 |
| A. J. Wilcox | 10,000 |
| C. J. Stanley | 13,000 |
| F. F. Ingalls | 10,000 |
| Katherine Wilcox | 2,000 |
| | 63,000 |

On the same day the drawing accounts of the stockholders were charged with the amounts set opposite their respective names:

| | |
|---|---:|
| O. S. Wilcox | $30,000 |
| A. J. Wilcox | 10,000 |
| C. J. Stanley | 13,000 |
| F. F. Ingalls | 10,000 |
| | 63.000 |

The $2,000 par value of preferred stock issued to Katherine Wilcox was charged to the drawing account of her father, O. S. Wilcox.

The value of the $61,700 par value Liberty bonds, when delivered to F. F. Ingalls, was $53,552.96.

OPINION.

MILLIKEN: When the Liberty bonds were distributed to the stockholders, in April, 1919, they became the individual property of the respective stockholders, to the same extent as though they had purchased them from the Government, or from any third person. This was a completed transaction in the fiscal year ending August 31, 1919, and has no bearing on the question involved in this proceeding.

There is no evidence in the record, bearing on the market value of the Liberty bonds sold on April 16, 1920, and the presumption is that the value at which they were sold was their value, both at the time of sale and the time of their delivery to F. F. Ingalls.

Petitioner contends that it made an outright purchase of the bonds from its stockholders for cash; that it paid for them par value, to wit, $61,700; that thereby its invested capital was increased by that amount; and that, having sold the bonds for $8,147.04 less than their par value, it thereby incurred a loss to that extent.

In support of its contention that its invested capital was increased by the amount of the par value of the bonds, petitioner points out that it agreed to purchase the bonds at par, that it entered on its books to the credit of the various stockholders, an amount equal to the par value of their bonds, and from these amounts, the purchase price of the stock was drawn. It should be observed that these were mere bookkeeping entries; that in fact no cash was paid; and what is more to the point, that none of the stockholders was entitled to withdraw from their account, any part thereof arising from the transfer of the bonds. Petitioner's contention entirely overlooks the only corporate action taken, with reference to these transactions. This action was the resolution of April 6, 1920, which limited the corporation to payment in its preferred stock. So, whether it be held that the corporation issued its preferred stock in exchange for the bonds or for the proceeds of the bonds, all that it acquired in the way of invested capital was either the then value of the bonds or the proceeds arising from the conversion of the bonds into cash. Since these amounts were the same, it must be held that petitioner acquired additional invested capital in the amount of $53,522.96, the amount allowed by respondent.

When we come to the question of loss, it becomes difficult, in a case like this, where there were only four stockholders, all of whom were

interested in the transaction, to separate the stockholders from the corporation. It is hard to perceive how these persons, dealing among themselves, could, out of such dealings, make a common gain or incur a common loss. However, we do not find it necessary to disregard the corporate entity. While giving that entity full recognition, we should look to all the facts of the case and endeavor to discover just what the transactions involved actually were. We should look to the necessity which gave rise to them, the real purpose of the parties, and what was actually done. The necessity referred to is disclosed by the following statement made by the president at the directors' meeting of April 6, 1920:

He stated that on account of expansion due to the increase of business, it is necessary to put additional money into the business; that for this reason, the company is about to issue $100,000.00 of preferred stock.

Thus, it is disclosed that the necessity arose from expansion of business and the need for ready cash, and the purpose was to be accomplished by the issue of preferred stock. Petitioner was not seeking to acquire the bonds for investment purposes, or even for the purpose of holding them for a time. The ready cash was to be acquired, not by the sale of the bonds to the company, but by a sale of the bonds by the company. The bonds were to be sold and in fact they were sold immediately upon their receipt. All the various entries relative to receipt and sale of these bonds were made on the same day. The petitioner was not selling a mere corporate asset, but was selling bonds, the possession of which it acquired for the sole purpose of conversion into money.

Looking through all the forms of bookkeeping and the technical words of the resolution, we find what the corporation needed was money; that what the stockholders desired to have was preferred stock; that in the end the corporation had money to the extent of $53,552.96, and the stockholders had their preferred stock. The fact that the word "purchase" was used in the resolution, did not convert into a sale to it what was merely a procedure to acquire cash. Cf. *Heryford* v. *Davis*, 102 U. S. 235. Nor can entries in books of account change facts or make or take from value. See *Baldwin Locomotive Works* v. *McCoach*, 221 Fed. 59, and *Doyle* v. *Mitchell Brothers Co.*, 247 U. S. 179. Petitioner did not suffer a loss in these transactions. It received precisely what it expected to receive—the money arising from the sale of the bonds.

*Judgment will be entered for the respondent.*

Considered by PHILLIPS and MARQUETTE.