## HERYFORD *v.* DAVIS.

1. In Missouri, where personal chattels have been sold and delivered, the vendee's mortgage or deed of trust on them to secure the purchase-money, he still retaining possession of them, is invalid against his creditors, unless it be acknowledged or proved, and recorded in the county in which he resides, in such manner as conveyances of land are, by law, directed to be acknowledged or proved and recorded.

2. A contract between A., a manufacturer of cars, and B., a railroad company in Missouri, recites that A. thereby agrees to loan to B., for hire, certain cars to be used upon its road "for hire as aforesaid;" that A. has received from B. its three promissory notes, two at sixty days and the other at four months, together with certain bonds of the company as collateral for said notes; that A. is to hold the notes as collateral security and collect them at maturity, and hold the proceeds for the safe custody and return to A., when demanded, of said cars delivered to B. "for the term of four months, for hire as aforesaid," the latter to have the right and privilege at any time during the four months to purchase the cars upon the payment to A. of $6,338.40, that being the amount of the notes; that until such payment is made in full B. shall have no right, title, claim, or interest in or to the cars, except as to their use for hire, but that they shall remain the property of A., to be accounted for by B. and redelivered to A. in default of the payment of the $6,338.40; that in the event of default being made in the payment of said notes, and A. shall elect to take the cars into his possession, the sums collected on the notes shall be retained by him for his own use, together with such a sum, to be realized from the sale by him of the cars, as may be needed to make the amount due and unpaid on the notes, the balance, if any, to be paid to B.; that upon the payment by the latter of said notes at maturity without hinderance or delay said cars shall belong to and become the property of B., and that A. will relinquish his ownership to them, and give B. a good and sufficient bill of sale or conveyance thereof. The cars were delivered to B., but the contract was not recorded. C., having obtained a judgment against B., levied his execution on the cars. *Held,* 1. That the contract was not a bailment nor a conditional sale, but that under it the ownership of the cars passed to B. 2. That to protect them from seizure and sale under C.'s execution the contract should have been recorded in the manner prescribed by the laws of Missouri for recording mortgages or deeds of trust of personal property.

ERROR to the Circuit Court of the United States for the Western District of Missouri.

This is an action under the statutes of Missouri, by Henry H. Davis, sheriff of Chariton County, for the use of the Jackson and Sharp Company, a corporation under the laws of Delaware, upon a bond executed and delivered to him by William Heryford and James W. Lewis, to indemnify him against all damages which he might sustain in consequence of the seizure and sale of certain cars levied upon as the property of the Keokuk and Kansas City Railway Company, under an execution sued out on a judgment rendered in favor of said William against the latter company and the Western Construction Company in the Circuit Court of Chariton County, Missouri.

A trial by jury having been waived by the written stipulation of the parties, the court below found the facts as follows : —

1. That on and prior to Dec. 23, 1873, the Jackson and Sharp Company was incorporated by Delaware, having its office and doing business at Wilmington, in that State, and engaged in manufacturing railroad cars ; that the Keokuk and Kansas City Railway Company was incorporated by Missouri, and engaged in the construction of a railroad through the county of Chariton and other counties in the latter State.

2. That, Jan. 5, 1874, the car company delivered to the railway company at Salisbury, Missouri, to be used on its road, one passenger car, No. 1, and one mail, baggage, and express car, also No. 1, lettered with the name of the railroad company, under and pursuant to the terms and conditions of the following articles of agreement entered into Dec. 23, A.D. 1873, by and between said car company of the first part, and the said railway company of the second part. It recites, —

"That the party of the first part has constructed one passenger car, No. 1, and one mail, baggage, and express car, also No. 1, and lettered with the name of the aforesaid railway company, to be used on the railroad of the party of the second part for hire," and then proceeds : "It is therefore agreed as follows : The said party of the first part hereby agrees to loan to the said party of the second part, for hire, the said passenger, and mail, baggage, and express cars for the space of four months from the date of this agreement, to be used

on said railway, and to deliver the same to the party of the second part at Wilmington, Delaware, to be transported to the said railway company at Salisbury, Missouri, at the expense and risk of the party of the second part, to be used on the said railway for hire as aforesaid, and not elsewhere, without the written consent of the party of the first part.

"The party of the first part has received from the party of the second part three promissory notes of the party of the second part, to the order of the Western Construction Co., and indorsed by A. C. Vandewater, president, F. A. Jones, John Foggett, A. C. Vandewater, G. P. Lawrence, John C. Noyes, and J. W. Morse, together with thirteen of the first-mortgage bonds of said railway company, of $1,000 each, as collaterals for said notes; two of said notes are dated Nov. 14, 1873, one payable at sixty days, and the other at four months, each for $1,919.20, payable, with interest at the rate of ten per cent per annum, after date, at the Mercantile Bank of St. Louis, Missouri; the other of said notes is dated Dec. 15, 1873, payable at four months, for $2,583, without interest, at the National Bank of Commerce, New York, which said three notes the said party of the first part is to hold as collateral security, and to collect the same at maturity, and to hold the proceeds, when collected, for the safe custody, and return to the party of the first part, when demanded, of the said passenger, and mail, baggage, and express cars, delivered to the party of the second part for the term of four months, for hire, as aforesaid, the said party of the second part to have the right and privilege to purchase at any time the said passenger, and mail, baggage, and express cars within the period of four months from aforesaid date, upon the payment to the party of the first part in cash the sum of $6,338.40, with interest at the rate of ten per cent per annum from the date of the agreement until day of payment; but until such payment is made in full the said party of the second part shall have no right, title, claim, or interest in and to the said passenger, and mail, baggage, and express cars, except as to their use or hire, nor any right or authority in any way to dispose of, hire, sell, mortgage, or pledge the same, but the said cars are, and shall remain, the property of the party of the first part, to be accounted for by the party of the second part to the party of the first part, and to be redelivered to the party of the first part, when demanded, in default of the payment of the aforesaid sum of $6,338.40, with interest as aforesaid, hereinbefore described, anything to the contrary herein contained notwithstanding.

"It is also agreed that should there be any default in the payment of any one of the above-described three promissory notes at the time and on the day that they, or either of them, respectively become due and payable, and the party of the first part shall elect to take into their own possession the above-described passenger and mail, baggage, and express cars, delivered as aforesaid, the several sums which may have been collected on account of the above-described promissory notes are to be retained by the party of the first part for their own use, and the passenger and the mail, baggage, and express cars are to be sold by the party of the first part at public or private sale, and of the net amount realized from said sale so much as should be needed to make the amount remaining due and unpaid on the above-described promissory notes, with the interest that may have accrued on the same, shall be retained by the said party of the first part, and the surplus, if any, shall be paid over to the said party of the second part.

"And the said party of the first part hereby agrees with the said party of the second part, that if all the said three promissory notes are paid on the day and at the time that they severally became due and payable according to their terms, tenor, and effect, that upon payment of all the said notes having been made without any hinderance or delay whatever, the party of the first part will then relinquish their ownership to the said passenger car and the mail, baggage, and express car, and will give to the party of the second part a good and sufficient bill of sale or conveyance for the said cars, and will apply to the payment of the same the proceeds of the above-described promissory notes, interest on notes overdue in any event to belong to the party of the first part.

"And it is also agreed and understood that, if the said notes are paid according to their tenor and effect, the said party of the first part may retain the money paid upon said notes, and then the said cars shall belong to and be the property of the said party of the second part, and the said party of the first part shall, on request, relinquish their ownership thereof, and make a bill of sale or conveyance of all their right, title, and interest therein, to the said party of the second part.

"In witness whereof, the parties have hereto set their name and caused the seal of their respective corporations to be affixed.

[SEAL.]          "JACKSON AND SHARP COMPANY,
                 "JOB H. JACKSON,
                 "THE KEOKUK AND KANSAS CITY RAILWAY CO.,
                     By S. H. MELVIN, *President.*
[SEAL.]          "ALBERT BLAIR. *Secretary.*"

3. That said cars were brought to Missouri and were placed upon and used by said railroad company on its railroad in Chariton County, Missouri.

4. That the notes mentioned in said contract were not paid at maturity, and still remain unpaid; that, Dec. 4, 1873, the Jackson and Sharp Company received $13,000 in the first-mortgage bonds of said railroad company as collateral security for said notes, for which it executed and delivered its receipt, as follows : —

"WILMINGTON, DEL., Dec. 4, 1873.

"Received of Keokuk and Kansas City R. R. Co., thirteen one thousand dollar bonds, No. 281 to 293, both numbers inclusive, as collateral for said Co. notes given in payment for one passenger car, and for notes yet to be given for one mail, bagg., and ex. car.

"JOB H. JACKSON, *Pres't.*"

5. That said bonds are yet in the hands of that company.

6. That the defendant, Heryford, under and by virtue of the provisions of an act of the General Assembly of Missouri, entitled " An Act to protect contractors, sub-contractors, and laborers in their claims against railroad companies or corporations, contractors, or sub-contractors," approved March 21, 1873, obtained, Nov. 20, 1874, a judgment in the Circuit Court of Chariton County, Missouri, against the said railroad company and the Western Construction Company, for materials furnished and labor performed by him in the construction of the road, which said judgment it was declared should be a lien upon the "road-bed, station-houses, depots, bridges, rolling-stock, real estate, and improvements pertaining to said railroad within the counties of Clark, Knox, Macon, Randolph, and Chariton, in the State of Missouri."

7. That on Nov. 25, 1874, an execution was issued on the judgment.

8. That Davis, sheriff of Chariton County, Missouri, indorsed and returned the execution as levied " upon the following-described property as the property of the Keokuk and Kansas City Railway Company and the Western Construction Company, to wit, the road-bed, iron, and cross-ties thereon of the Keokuk and Kansas City Railway Company, station-houses,

depots, bridges, rolling-stock, and improvements appertaining to said road, situated in Chariton County; also a lot of cross-ties piled up along the line of said road, supposed to be about seven thousand; also locomotive engine No. 1, named James W. Lewis, and tender of the same; one passenger-coach No. 1, branded K. & K. C. R. W. Co.; and one mail and express car, branded K. & K. C. R. W. Co.; four box or freight cars; two coal-cars; one flat-car; three hand-cars; two iron-cars; one set blacksmith tools; one lot shovels, spades, and picks; and all the tools and implements pertaining to said railroad which are in Chariton County, and all the furniture in the railroad and construction cars; office in the town of Salisbury "

It was also returned May 3, 1875, by Berry Owens, sheriff of Chariton County as levied " on one box-car, three rubber-cars, and three break-jacks, as the property of the Keokuk and Kansas City Railway Company and the Western Construction Company."

That Heryford, prior to Dec. 12, 1874, caused Davis to levy upon and seize, under an execution issued from the Circuit Court of Chariton County, Missouri, in his favor and against the Keokuk and Kansas City Railway Company and the Western Construction Company, the cars in said contract described.

That on Dec. 13, 1874, the Jackson and Sharp Company served notice upon the sheriff claiming the passenger car and mail, baggage, and express car under and by virtue of chap. 55, sect. 28, p. 608, vol. i. Wagn. Mo. Stat., title " Executions."

That the sheriff thereupon gave Heryford notice of the claim of the company, who, Dec. 15, 1874, executed and tendered his bond to the sheriff, with Lewis as security, conditioned " that the said bounden William Heryford and his securities will indemnify the said H. H. Davis, as sheriff aforesaid, against all damage and costs which he may sustain in consequence of the seizure and sale of the above-described passenger-coach No. 1, and mail, baggage, and express car No. 1, branded with the name of the K. & K. C. R. W. Co., and to satisfy and pay to any person or persons claiming the same all damages which said person or persons may sustain in consequence of such seizure and sale."

That by virtue of the execution aforesaid, and in pursuance

of chap. 55, sect. 58, p. 608, vol. i., Wagn. Mo. Stat., title "Executions," Berry Owens, sheriff of Chariton County, Missouri, on May 1, 1875, advertised and sold the said passenger-car, and mail, baggage, and express car, so levied upon.

That prior to the sale and after the levy the defendants had knowledge of the contract of Dec. 23, 1873.

That the parties, in negotiating their contract of Dec. 23, 1873, and in the subsequent correspondence and dealings after the execution of the same, treated and undertook said contract. as a conditional sale.

That the contract has never been acknowledged or recorded.

That the cars were, at the time they were delivered, marked and branded as described in the contract.

That the value of the cars, at the time of the seizure by the sheriff, was $3,800.

As a conclusion of law, the court found that the plaintiff was entitled to recover of the defendants $3,800, with interest, by way of damages, in the sum of $540, together amounting to $4,340, and rendered judgment accordingly.

Heryford and Lewis thereupon sued out this writ of error.

Upon the facts and in the rendition of the judgment the judges were divided in opinion upon the following points, which are certified here : —

1. Whether on the facts the plaintiff or the defendants were entitled to judgment.

2. Whether the instrument under which the plaintiff claims was required by the laws of Missouri to be registered in order to be valid against the creditors of the said railroad company, the property in question having been delivered to and being in possession and use of the said company at the time of the levy.

3. Whether the said instrument is a "mortgage or deed of trust of personal property," within the meaning of the statutes of Missouri ; viz., 1 Wagn. Stat. p. 281, sect. 8.

*Mr. Thomas T. Crittenden* for the defendant in error, in support of the judgment below.

The contract of Dec. 23, 1873, was a conditional sale of the cars, at a fixed price, to be paid on a certain day, the title to remain in the seller until payment. Such payment was a

condition precedent to the vesting of title in the buyer, and, not having been made, the cars were not subject to levy under the execution. *Porter* v. *Pettingill*, 12 N. H. 298; *Bigelow* v. *Huntley*, 8 Vt. 151; *Ayre* v. *Bartlett*, 9 Pick. (Mass.) 156; *Reed* v. *Upton*, 10 id. 522; *Fairbanks* v. *Phelps*, 22 id. 535; *Strong* v. *Taylor*, 2 Hill (N. Y.), 326; *Hunt* v. *Bay State Iron Co.*, 97 Mass. 279; *Fenwick* v. *Smith*, 63 Pa. St. 18; *Clarke* v. *Farnum*, 7 R. I. 174; *Coggill* v. *Hartford & New Haven Railroad Co.*, 3 Gray (Mass.), 545.

The plaintiffs in error had notice of the title of the Jackson and Sharp Company, before the execution of the bond sued on.

This case is clearly distinguished from *Hervey* v. *Rhode Island Locomotive Works* (93 U. S. 664), where the transaction occurred in Illinois. The contracts and the laws of the respective States which apply to them essentially differ.

In Illinois, it is held that where the vendor of personal property delivers possession to the purchaser under an agreement that the property is to be considered as belonging to the vendor until the payment of the purchase-money, notwithstanding such delivery of possession, such agreement as to the creditors of the purchaser is fraudulent and void. *McCormick et al.* v. *Hadden*, 30 Ill. 370; *Ketcham* v. *Watson*, 24 id. 591; *Thompson* v. *Yeck*, 21 id. 73; *Murch* v. *Wright*, 46 id. 487.

In Missouri, the law of which State must govern this case, such a conditional sale is valid not only as between the parties but as against subsequent *bona fide* purchasers or creditors of the vendee. *Parmlee* v. *Catherwood*, 36 Mo. 480; *Little* v. *Page*, 44 id. 412; *Ridgway* v. *Kennedy*, 52 id. 24; *Robbins* v. *Phillips*, 68 id. 100; *Rogers Locomotive Works* v. *Lewis*, 4 Dill. 158.

There was no waiver of the vendor's rights, nor such laches in asserting them as forfeited its title to the cars. In *Rogers Locomotive Works* v. *Lewis* (*supra*), the notes for the purchase-money were all overdue eighteen months, and the property was still in the possession of the vendee. This was not laches. In the present case the notes were overdue only eight months.

The statute of Missouri on the subject of bailment by way

of loan (1 Wagn. Stat., p. 280) has been construed in *Mc-Dermott* v. *Barnum et al.*, 16 Mo. 114, and *Criddles's Adm'r* v. *Criddles*, 21 id. 522. Sect. 5 is peculiar, and may have had some effect upon the mind of the draftsman of the contract between the companies.

*Mr. Henry S. Green, contra.*

MR. JUSTICE STRONG delivered the opinion of the court.

The correct determination of this case depends altogether upon the construction that must be given to the contract between the Jackson & Sharp Company and the railroad company, against which the defendants below recovered their judgment and obtained their execution. If that contract was a mere lease of the cars to the railroad company, or if it was only a conditional sale, which did not pass the ownership until the condition should be performed, the property was not subject to levy and sale under execution at the suit of the defendant against the company. But if, on the other hand, the title passed by the contract, and what was reserved by the Jackson & Sharp Company was a lien or security for the payment of the price, or what is called sometimes a mortgage back to the vendors, the cars were subject to levy and sale as the property of the railroad company. The statute of the State of Missouri enacts that "no mortgage or deed of trust of personal property shall be valid against any other person than the parties thereto, unless possession of the mortgaged or trust property be delivered to and retained by the mortgagee or *cestui que trust*, or unless the mortgage or deed of trust be acknowledged or proved and recorded in the county in which the mortgagor or grantor resides, in such manner as conveyances of land are, by law, directed to be acknowledged or proved and recorded." 1 Wagn. Stat., c. 35, art. 2, sect. 8. The plain purpose of this statute was to render secret liens upon personal property ineffectual as against purchasers or creditors. The property in this case was in the possession of the railroad company when the levy upon it was made, and the contract under which the company held it was not recorded.

What, then, is the true construction of the contract? The

answer to this question is not to be found in any name which the parties may have given to the instrument, and not alone in any particular provisions it contains, disconnected from all others, but in the ruling intention of the parties, gathered from all the language they have used. It is the legal effect of the whole which is to be sought for. The form of the instrument is of little account.

Though the contract industriously and repeatedly spoke of loaning the cars to the railroad company *for hire*, for four months, and delivering them for use *for hire*, it is manifest that no mere bailment for hire was intended. No price for the hire was mentioned or alluded to, and in every bailment or letting for hire a price or compensation for the hire is essential. The amount may not be stipulated. It may be a reasonable compensation or a *quantum valebat*, but the contract must contemplate payment for the use of the thing let or bailed. Not only was no such payment provided for or required, but all intention to demand it is negatived by the strongest implications. The manufacturing company exacted and took promissory notes for the entire selling price of the property, $6,138.40, and, in addition thereto, collaterals to a large amount to secure payment of the notes. The aggregate of the notes was equal to that price; two of them for $1,919.20 each, one payable at sixty days and the other at four months, bearing interest from their date at the rate of ten per cent; and the third note, at four months, being for $2,583, interest at that rate having been added to the principal sum. One of these notes fell due only nine days after the cars were delivered to the railroad company, and both the others before the expiration of four months from the date of the agreement. The notes were to be collected at maturity, and thus it was contemplated that before the end of four months the manufacturing company should have in hand in cash the full value or price of the cars. It is needless to say that all this is totally inconsistent with the idea that the parties intended a mere letting or bailment for hire.

It appears equally clear to us that the contract was not one for a conditional sale. It is true it said the manufacturing company were to hold the three notes as collateral security,

and collect the same at their maturity, and "hold the proceeds when collected for the safe custody and return to the party of the first part, when demanded, of said passenger, mail, baggage, and express cars, delivered to the party of the second part for the term of four months for hire," "the said party of the second part to have the right and privilege to purchase" (the cars) "at any time within the said period of four months, upon payment to the party of the first part, in cash, the sum of $6,338.40, with interest at the rate of ten per cent from the date of the agreement until day of payment, but, until such payment is made in full, the said party of the second part shall have no right, title, claim, or interest in and to said passenger and mail, baggage, and express cars, *except as to their use or hire*, nor any right or authority in any way to dispose of, hire, sell, mortgage, or pledge the same, but that the said cars are and shall remain the property of the party of the first part, to be accounted for by the party of the second part to the party of the first part, and to be redelivered to the party of the first part, when demanded in default of the payment of the aforesaid sum of $6,338.40, with interest as aforesaid, hereinbefore described, anything to the contrary herein contained notwithstanding."

If this were all, it would necessarily be held that a conditional sale was intended. But it is not all. It is quite unmeaning for parties to a contract to say it shall not amount to a sale, when it contains every element of a sale, and transmission of ownership. This part of the contract is to be construed in connection with the other provisions, so that if possible, or so far as is possible, they all may harmonize. Thus construed, it is quite plain these stipulations were inserted to enable the manufacturing company to enforce payment, not of any rent or hire, but of the selling price of the cars for which the company took the notes of the railroad company. They were intended as additional security for the payment of the debt the latter company assumed. This is shown most clearly by the other provisions of the contract. The notes became the absolute property of the vendors. As has been stated, they all fell due within four months, and it was expected they would be paid. The vendors were expressly

allowed to collect them at their maturity, and it was agreed that whatever sums should be collected on account of them should be retained by the vendors for their own use.

No part of the money was to be returned to the railroad company in any event, not even if the cars should be returned. On the contrary, it was stipulated expressly that if the manufacturing company should elect to take the cars into their own possession, which they reserved the right to do in case of default of payment of the notes, the property should be sold, and of the net amount realized from the sale, so much as should be needed to make the amount remaining due and unpaid on the promissory notes, with the interest that might have accrued thereon, should be retained by the manufacturing company, and the surplus, if any, should be paid over to the railroad company.

What was this but treating the notes given for the sum agreed to be the price of the cars as a debt absolutely due to the vendors? What was it but treating the cars as a security for the debt? And why stipulate that the surplus which might be obtained from the sale of the cars, after taking them back, beyond what was needed to pay the unpaid part of the debt, should be paid over to the railroad company, if that company was not the owner of the cars, even while they were in the possession of the other company, and had not even then what may be called an equity of redemption?

In view of these provisions, we can come to no other conclusion than that it was the intention of the parties, manifested by the agreement, the ownership of the cars should pass at once to the railroad company in consideration of their becoming debtors for the price. Notwithstanding the efforts to cover up the real nature of the contract, its substance was an hypothecation of the cars to secure a debt due to the vendors for the price of a sale. The railroad company was not accorded an option to buy or not. They were bound to pay the price, either by paying their notes or surrendering the property to be sold in order to make payment. This was in no sense a conditional sale. This giving the property as a security for the payment of a debt is the very essence of a mortgage which has no existence in a case of conditional sale.

It may be added that the notes were given to the vendors before the cars were delivered. So, also, the collaterals for the notes were taken before the delivery ; and when they were taken, the president of the manufacturing company acknowledged he received them, not as additional security for the restoration of the cars at any time thereafter when demanded, but as security for the notes "given in payment" for the cars. This is confirmatory of the construction we have given to the contract. It tends to show that the transaction was a sale by which the ownership passed to the railroad company, the vendors retaining only a lien for the consideration.

It follows, from what we have said, that to protect the cars from seizure and sale by virtue of executions against the railroad company, recording the contract was made necessary by the statutes of Missouri, to which we have referred.

The judgment of the Circuit Court will, therefore, be reversed, and the record remitted with instructions to enter judgment, on the special finding of facts, in favor of the defendants below ; and it is

*So ordered.*

Mr. JUSTICE BRADLEY dissenting.

I dissent from the judgment in this case. I think that, in the absence of express law to the contrary, not only has a man the right to make a conditional sale of his property, but that this right is not opposed to sound public policy, and should be fairly and liberally dealt with. The present case was, in my opinion, clearly a conditional sale, and nothing else ; and the owners of the property had a right to reclaim it on the terms contained in the agreement. These terms were fair and just ; not involving any forfeiture, but providing for a due allowance for every dollar paid, by requiring a sale of the property if the purchase should not go into effect.