Charles P. Daly, Chief Justice.—I
think we should hold that the agreement in this case is a mere device to evade what is required by the statute in the case of conditional sales (L. 1884 o. 315). This is a remedial statute, the object of which is to give some protection against loss or injury to persons buying personal property from those who have all the outward indicia of ownership by the possession and use of it, the sale of which, after the article has been paid for, may be defeated by a private agreement, by the terms of which the title to the property was to remain in the person originally contracting to sell it until the whole of the purchase-money was paid, which, in such conditional sales, is usually payable in installments at periods agreed upon.
The statute above referred to provides that, unless such an agreement or a copy of it is filed in the manner provided for by the act, it shall be void as against subsequent purchasers or mortgagees in good faith; and the act further declares that such conditional sales shall become absolute, unless within thirty days of the expiration of each and every year thereafter a statement exhibiting the vendor’s interest in the property is also filed. This is substantially requiring to be done in the case of conditional sales what has for a long time been required to be done in the case of mortgages of personal property, and in all such remedial statutes the rule is to consider what the mischief was that the law did not previously provide for, what remedy the statute meant to give to cure that mischief, and the act is to be so construed as to suppress the mischief and advance the remedy (Co. Litt. 11, 42; Potter’s Dwarris, 58).
The agreement under consideration declares that the plaintiffs, The Campbell Printing Press &c. Co., let, and H. A. Landman hired for use, a printing press, which is particularly described by its name and number, for the term of ten months, at the rate of $10 a month, payable on the 15th of each and every month, beginning November 15th, 1884; the lessee, Landman, to furnish suitable and proper foundations for the press at his place of business in Brooklyn; *250 that he was to keep it insured during the said term in the sum of $800, depositing the policy with the plaintiffs; that he was not, without the plaintiffs’ consent, to assign the lease, nor sublet the property, nor remove it during the term; that at the expiration of the term he was to deliver up the possession of it to the plaintiffs; and that, if default was made in the payment of any of the installments, the plaintiffs were to re-possess' themselves of the property and enjoy it thereafter as though this agreement had never been made.
The agreement further declares that the plaintiffs agreed to sell to Landman a printing press of the same name, number and description, warranted to do the same and equally good work, for the sum of $700, to be paid in monthly installments of $60 each, payable on the 15th day of each month thereafter for the.term of ten months, being the same days that the ten payments of ten dollars each were to be paid. The agreement then declares that when the whole amount provided for, or the $700 should be paid, the plaintiffs wer§ to deliver to Landman the last named press, boxed on cars at their factory, for which, the agreement says, Landman is to pay the sum of $100, and for the balance (600) he is to give his notes, payable, with legal interest, on the 15th of each month, as before stated; and that, upon the payment of all these notes, the plaintiffs are to credit all rents paid for the press; and there- is a final provision that this written contract contains the whole agreement, that the plaintiffs are to be governed .solely by it, and not by any verbal agreement.
The whole amounts substantially to this: That contemporaneous with each monthly payment of $10 for what is declared to be a lease for ten months of the press delivered to and used by Landman, there is to be a payment by him of $60 on each of the said days during the ten months towards the purchase-money of another press of exactly the same kind, which is to be delivered to Landman at the plaintiffs’ factory when the entire $800 is paid by him.
It is very plain to my mind that the whole design of this *251 agreement is to evade the law requiring agreements for conditional sales to be filed, and the result in the case of this particular agreement was the very mischief which the statute was designed in some degree to guard against; for it is set up in the answer and admitted by the demurrer that the defendant, who was ignorant of the agreement between the plaintiffs and Landman, bought the printing press of Landman, paying him therefor the sum of $700, the press being then in Landman’s office and the defendant believing him to be the owner of it.
The statute applies to every contract for the conditional sale of chattels which shall be followed by an actual and continued change of possession of the thing contracted for; and the distinction resorted to in this agreement and relied upon to avoid the requirements of the statute was to provide that the press delivered should be held, under what is denominated a lease, whilst the payments are being made for the purchase of exactly the same kind of press, and which, when the purchase-money ($800) was all paid, was to be deliverable at the plaintiffs’ factory. But it is obvious that the practical result of this kind of agreement would be, in each instance, that the press which is declared only to be leased is the one that, in reality, upon the payment of $800, would be sold; for being then set up upon its foundations in the purchaser’s place of business, it would be no object to him to have exactly the same kind of press delivered at the plaintiffs’ factory, as it would involve the removal of the one already set up and in use and the expense of transporting the other one from the factory of the plaintiffs and setting it up on “ proper and suitable foundations,” to use the language of the agreement.
The calling of what was provided for in that part of the agreement a lease does not necessarily make it so; especially in view of a statute, the object of which is to render secret liens upon personal property ineffectual as against innocent purchasers, unless the agreement creating the lien is filed in the manner provided for in the statute, so that notice of it can be obtained upon inquiry, for the whole *252 instrument is to be taken together, and the ruling intention of the parties as gathered from the whole of it is what is to be regarded (Heryford v. Davis, 102 U. S. 235; Dibble v. Hathaway, 11 Hun 574, 575).
The agreement was one, in my opinion, that should have been filed under the statute, and I am therefore in favor of reversing the judgment.
Allen, J., concurred.
Judgment reversed.