HEINE SAFETY–BOILER CO. v. FRANCIS BROS. & JELLETT.

FRANCIS BROS. & JELLETT v. HEINE SAFETY–BOILER CO.

(Circuit Court, E. D. Pennsylvania. December 21, 1900.)

Nos. 1 and 44, April, 1900.

SALES—CONSTRUCTION OF CONTRACT TO FURNISH BOILERS—MODIFICATION OF SPECIFICATIONS.

Where a bidder for the furnishing of boilers required by a contract for the construction of a building, instead of bidding upon the specifications contained in such contract, submitted a proposition and specifications of its own, which were, at its instance, attached to the contract subsequently made between such bidder and the general contractor as modifying the specifications of the original contract, a guaranty contained in such proposition as to evaporating capacity and the tests to be met must be construed as superseding the provisions of the original specifications relating to the same subjects, rather than as having been voluntarily offered by the bidder as additional thereto.

On Motions for New Trial.

J. J. De Kinder and J. H. McNeal, for Heine Safety-Boiler Co.

Frank P. Prichard, for Francis Bros. & Jellett.

DALLAS, Circuit Judge. The first stated action was brought to recover the contract price of two boilers; the other for the recovery of damages for the alleged nonconformity of those boilers with the requirements of the contract under which they were furnished. The two cases were tried together, and in each there was a verdict for the Heine Safety-Boiler Company. Francis Bros. & Jellett have filed separate motions for new trial, but, as the controlling question is the same in both cases, these motions may be disposed of in a single opinion.

Francis Bros. & Jellett had contracted to do certain of the work required in the reconstruction of the Rittenhouse Building, on Arch street, Philadelphia. Their contract provided that they should furnish two water-tube boilers. They accordingly invited bids from several boiler makers, including the Heine Company, to whom they wrote as follows:

"Philadelphia, April 1st, 1899.

"Heine Safety-Boiler Works, Bourse Building, Philadelphia—Gentlemen: Please name us your best figures for furnishing and erecting, together with connections to stack, the boilers called for in the Rittenhouse Building, N. W. Cor. 7th & Arch St. Your bid, to receive our consideration, must reach us not later than April 11th. Plans and specifications can be seen at our drawing room, N. W. Cor. Marshall & Willow Sts.

"Yours, very truly,          Francis Bros. & Jellett, Incorporated,
                                         "S. A. Jellett, Mgr."

The plans and specifications referred to in this letter were those which accompanied the contract between Francis Bros. & Jellett and the owner of the property. They were seen by the Heine Company, but they, instead of simply bidding thereon, addressed a letter to Francis Bros. & Jellett, dated April 10, 1899, in which they said:

"We inclose you herewith detail specifications and proposition covering the two .Heine safety boilers to be erected in the Rittenhouse Building, 7th & Arch Streets, Philadelphia. * * *"

After the receipt by them of this letter and the inclosure it mentioned, Francis Bros. & Jellett sent a contract, executed by themselves, to the Heine Safety-Boiler Company, for execution by them. To this contract specifications were annexed, which were the same as those of the contract between the owner of the property and Francis Bros. & Jellett; and the first two paragraphs of the contract itself were as follows:

"This agreement, entered into this first day of May, A. D. eighteen hundred and ninety-nine, by and between the Heine Boiler Company, of St. Louis, Missouri, party of the first part, and Francis Brothers & Jellett, Incorporated, a corporation of the state of Pennsylvania, party of the second part. witnesseth: That for and in consideration of the payments and covenants herein mentioned to be made and performed by the said party of the second part the said party of the first part doth hereby agree and covenant to furnish all materials and apparatus for, and to build, construct, and finish, complete, ready for use, two (2) water-tube boilers, with their setting, damper regulator, etc., called for in specifications prepared by Francis Brothers & Jellett, Incorporated, consulting engineers, dated March 15th, 1899, to . be erected in the Rittenhouse Building, 707 & 709 Arch St., Philadelphia. The whole of said work is to be erected, constructed, and finished in conformity with the plans and specifications above referred to; both plans and specifications being understood as forming part of this agreement. All work called for by these plans and specifications is to be erected under the direction and supervision of Mr. Oliver Earnshaw, engineer for Mr. Henry C. Lea, owner of the building:"

After the word "agreement," immediately preceding the last sentence contained in the above extract, the Heine Company inserted an asterisk, and at the foot of the contract they placed another, and there added these words: "Except the changes in details of construction covered by our proposition and specifications dated 4/10/99, and attached hereto." They then attached the "specifications and proposition" which had been inclosed with their letter of April 10, 1899, signed the contract as thus altered, and returned it to Francis Bros. & Jellett, who thereupon, under date of May 9, 1899, wrote to the Heine Company, saying:

"We are in receipt of contract for boilers, Rittenhouse Building, and note that you have made certain additions. * * * The second one, just above the signature, we would like to know what you mean,—'Except the changes in detail and construction covered by our proposition and specifications dated 4/10/99, attached hereto.' Please specify what these changes 'in· detail and construction' are, so that we may know what you mean by this section. Let us have this at once, and oblige. You will recollect that our signature was attached to this contract before these changes were made, and they are not binding on us unless we are satisfied after getting this detail from you."

To this letter the Heine Company replied as follows:

"5/10/99.

"Messrs. Francis Bros. & Jellett, 704 Arch Street, Philadelphia, Pa.—Dear Sirs: Answering your favor of the 9th, in which you ask what we mean by 'except the changes in details and construction covered by our proposition and specifications dated 4/10/99, attached hereto,' would say that we refer simply to the minor details in which the construction of the Heine boiler differs from your· general specifications, and these details are set forth in our specification sheet dated 4/10/99. For instance, especially in regard to

the testing and inspecting of the metal, the punching and reaming of the rivet and tube holes, and the caulking of the seams; also the guaranties which we make, and the amount of work which we include in our bid. . This proposition of ours of the 4/10, with the modified price, is what you accepted, and naturally it should bear a prominent part in the total contract.   Trusting this is satisfactory to you, we remain,
"Very truly yours,                          Heine Safety-Boiler Co."

To this letter Francis Bros. & Jellett made no reply, and under this state of the contractual relations between the parties, the Heine Company did put two boilers into the Rittenhouse Building.

I instructed the jury that a certain part of the specifications which Francis Bros. & Jellett had annexed to the contract was wholly superseded by the specifications which the Heine Company afterwards attached thereto.   The part of the Francis Bros. & Jellett specification  which, with the related provision respecting "tests," was held to have been superseded, is as follows:

"Boilers. There will be two (2) new boilers erected in boiler room of new building, set singly as shown; each boiler having a capacity of one hundred and forty (140) nominal horse power, and must be capable of evaporating forty-two hundred (4,200) pounds of water from and at 212 degrees Fahrenheit per hour, with ordinary firing."

The part of the Heine Company specification which was held to have superseded the foregoing is as follows:

"Either of these boilers will, when evaporating 4,200 pounds of water from and at 212 degrees Fahrenheit per hour, evaporate 9.0 pounds of water per pound of dry, newly-mined red ash anthracite pea or buckwheat coal, containing not more than 15% refuse (10.5 lbs. of water per pound of combustible); and when using the same coal, and with $\frac{3}{4}$ inch draft at boiler damper, either boiler may be forced to evaporate 5,500 pounds of water per hour from and at 212 degrees F. continuously, and at the same time not exceed 1% moisture in the steam at boiler valves. It is understood by us that the tests made to determine these guaranties are to be made by the engineers under our direction; · the engineers' fees being paid by the purchaser; we simply furnishing the necessary coal and handling the ashes," etc.

Upon the hearing of the present motions I was in doubt as to the correctness of the ruling which has just been stated, but, having since carefully considered the subject with the aid afforded by the arguments of counsel, I have finally reached the conclusion that it was right.   The antecedent negotiations of the parties do not, of course, constitute a part of the contract; but, as showing the situation of affairs when it was actually closed by the receipt, without answer, of Heine Company's letter of May 10, 1899, it is proper, and desirable, I think, that the circumstances of the case should, from the beginning, be again and more particularly referred to.   Francis Bros. & Jellett had contracted with a third party to furnish two water-tube boilers in accordance with certain specifications.   They invited the Heine Company to bid, and informed them that plans and specifications could be seen at their drawing room.   The specifications referred to stated that bidders "must carefully examine the drawings and specifications when bidding, and, if any change is deemed necessary in the details of the specification or in the layout on the plans to enable them to comply with the requirements of this specification, they must promptly notify the engineers at the time

·of making their proposal." It also stated that bids were asked on six "makes of boilers," including "Heine boilers." The Heine Company examined this specification, but did not accept it. Their proposal was an independent one. It was "to furnish * * * two Heine patent safety boilers of (see guaranty) horse power each, * * * as per the following specifications," which included the guaranty clause heretofore quoted, and one in these words: "Terms. Cash on demonstration of guaranties, but tests to be made 30 days from installation." It is obvious that the contract which Francis Bros. & Jellett sent to the Heine Company did not conform with the proposal of that company. Their declination to sign it without change was, therefore, certainly not extraordinary. As they said in their letter of May 10, 1899, this proposition of theirs was what had been accepted, "and naturally it should bear a prominent part in the total contract." Accordingly, they altered the instrument which had been sent to them in the manner which has been explained. They attached their own proposition and specifications, and excepted the changes in details of construction which they covered from and out of the specifications originally annexed; and, if the minds of the parties had met at this point, while there could have been no doubt that, as to the difference in details of construction, the Heine specifications would have been controlling, the question whether their guaranty should also not be regarded as the only operative one would not have been free from difficulty; for, although the added clause did not mention that guaranty, yet it formed part of the writing to which the clause referred, and it might not unreasonably have been inferred that no guaranty other than that which especially related to the particular "make of boilers" and to the details of construction specified could have been understood to be applicable. But, as Francis Bros. & Jellett correctly said, no contract as yet existed; and in answer to their inquiry as to what was meant by the change which the Heine Company had made they were informed, among other things, "also the guaranties which we make." Here we have, in effect, the statement that the guaranties which the Heine Company make are those contained in the specifications which they had themselves attached to the contract, and upon this statement the contract, as respects the point under consideration, was closed. What, then, with reference to the circumstances of the case, is the natural meaning of the words "the guaranties which we make"? To me it seems plain that the guaranties referred to were those of the Heine Company's specifications alone, to the exclusion of those contained in the Francis Bros. & Jellett specifications; and that the sense would not be varied if, for the phrase in question, this language were substituted: "We make the guaranties set out in our specifications, and not those which are embodied in yours." Therefore I cannot sustain the contention that this part of the explanatory letter should not be permitted to nullify any part of the original specifications with which it is not necessarily inconsistent. So to decide would be to hold that the Heine Company intended to voluntarily add an undertaking on their part to those which were contained in the contract as at first written, and such intention cannot, I think,

reasonably be ascribed to them.    But it is further contended that the reference to guaranties in the final letter of the Heine Company cannot be related to the first paragraph of the section headed "Boilers" in the Francis Bros. & Jellett specifications, because, as is claimed, that particular paragraph contained no guaranties.    It is argued that the word "guaranty" is not synonymous with the word "agreement," but ordinarily signifies such an undertaking as to some fact or performance as is enforceable as well after as before delivery and acceptance, and does not include matters of description, or conditions which would be waived by acceptance of the goods.    It may be conceded that the distinction here pointed out is technically, and when abstractly considered, correct;    that a guaranty, where the word is used in the sense of "warranty" (2 Pars. Cont. 3), is an express or implied statement of something which a party undertakes shall be a part of a contract, and, though part of the contract, collateral to the express object of it";    and that "selling a particular thing by its proper description" cannot with accuracy be said to create a warranty. Benj. Sales, § 600.    But see Pars. Cont. 582.    It must be borne in mind, however, that we are dealing with the business correspondence of business men, and that attention should be directed, not to legal refinements respecting the words employed, but to the ascertainment of "the substantial intent of the parties, which is the fundamental rule in the construction of all agreements."    Canal Co. v. Hill, 15 Wall. 100, 21 L. Ed. 64.    The word "guaranty" is not to be taken in "absolute literality."    The question is, not what is the technical meaning of that word? but what did the parties intend it to refer to? Reed v. Insurance Co., 95 U. S. 23–31, 24 L. Ed. 348.    "What, then, is the true construction of the contract?    The answer to this question is not to be found in any name which the parties may have given" or may not have given, to any particular clause, "and not alone to any particular provision it contains, disconnected from all others, but in the ruling intention of the parties, gathered from all the language they have used.    It is the legal effect of the whole which is to be sought for.    The form of the instrument is of little account."    Heryford v. Davis, 102 U. S. 243, 26 L. Ed. 160;    Rainey v. Hogsett, 40 C. C. A. 335, 100 Fed. 207.    The boilers clause of the Francis Bros. & Jellett specification and the guaranty of the Heine Company specifications relate, unquestionably, to the same subject, namely, to evaporating capability, and their terms are, to some extent, the same.    The first paragraph of the boilers clause provides that each boiler "must be capable of evaporating 4,200 pounds of water from and at 212 degrees Fahrenheit per hour, with ordinary firing," and in its second paragraph it is said that "they [the contractors] must also guaranty the number of pounds of water the boilers will evaporate per hour per pound of dry red ash anthracite pea coal containing not over sixteen per cent. refuse, and when developing their normal horse power."    The language of the Heine Company's guaranty is:    "Either of these boilers will, when evaporating 4,200 pounds of water from and at 212 degrees F. per hour, evaporate 9.0 pounds of water per pound of dry, newly-mined red ash anthracite pea or buckwheat coal, containing not more than

105 F.—27

fifteen per cent. refuse (10.5 pounds of water per pound of combustible); and when using the same coal, and with ¾ inch draft at boiler damper, either boiler may be forced to evaporate 5,500 pounds of water per hour from and at 212 degrees F. continuously, and at the same time not exceed one per cent. moisture in the steam at boiler valves." That the Heine Company, in referring, as they did, to these guaranties of their own specifications, intended to substitute them for that part of the Francis Bros. & Jellett specification which has been quoted above, seems to me to be evident by comparison of the one with the other; and I cannot assent to the proposition that the only guaranties of the original specifications are to be found in that part of the boiler clause which follows the words "must also guaranty," and in the other separate and distinct provision in which the word "guaranty" is used, namely, the "contractor must also guaranty to keep the boilers in repair, at his own expense, for a period of one year," etc. This latter provision has no connection with the subject with which the Heine guaranty is concerned; and the presence of the word "also" in the phrase "they must also guaranty," as it occurs in the boiler clause, plainly indicates that the undertakings which preceded. as well as those which followed it were regarded as guaranties. It is, however, especially insisted that the words, "each boiler having a capacity of 140 nominal horse power," as included in that clause, were descriptive merely of the thing contracted for, and that, therefore, that part of it, at least, was unaffected by the Heine guaranty. The distinction thus suggested is ingenuous and plausible, but is, I think, too subtle to have entered the minds of the parties; and, indeed, it is clear that they had in fact no thought of disconnecting this particular portion of a general provision for "capacity" from that which, in the same sentence, immediately follows (Heryford v. David, supra); for the Heine Company's proposal, which was to furnish "two Heine patent safety boilers of (see guaranty) horse power each," shows that the whole subject of horse power was referred to their guaranty, and was intended to be covered by it.

I agree with the learned counsel of Francis Bros. & Jellett that in doubtful cases "there is one test which, while not conclusive, is very important in construing commercial contracts, and that is, what is the construction which would best accord with the probabilities of the situation?" I am, however, unable to accept his view that the present contract should not be construed as I have construed it, because, as he thinks, such a construction involves a conclusion "absolutely inconsistent with what common sense would teach to have been the natural actions of the parties." Francis Bros. & Jellett may have failed to observe the extent to which the proposal of the Heine Company departed from the terms of the contract which Francis Bros. & Jellett had made with the owner of the property, or they may have thought that these differences would not turn out to be important; but, be this as it may, it seems to me that it would be quite as reasonable to conclude that Francis Bros. & Jellett made an improvident agreement as to suppose that the Heine Company proposed to add their accustomed guaranties to others which had been

suggested with reference to water-tube boilers generally, and which may have been wholly inappropriate to the Heine boilers.

After full consideration, I remain of the opinion which I expressed upon the trial. I still think that the guaranty clause of the Heine Company specifications wholly superseded the boilers paragraph, and the related provisions respecting "tests," in the original specifications; and my confidence in the correctness of this opinion is confirmed by the somewhat significant fact that the witnesses who were familiar with the subject repeatedly referred, in giving their testimony, to the boilers clause of the original specification, as well as to the guaranty of the Heine specifications, as guaranties. The motions for new trial are denied.