### GARDNER et al. v. TOWN OF CAMERON et al.

(Supreme Court, Appellate Division, Fourth Department. March 5, 1913.)

1. SALES (§ 456*)—CONDITIONAL SALE—LEASE OR PURCHASE.

A contract between a steam roller company and a town, by which the company leased a steam roller to the town at the rate of $10 a day, the town agreeing to use it for not less than 64 days in one year, and providing that it would automatically continue for the four succeeding years, unless notice was given by the town terminating it, that, in case of such continuance, the town would use it in the succeeding years for at least 64 days at the same rental, and that upon completion of the payment of the rent for the 5 years the company, for the consideration of $1 and the rental payments, agreed to sell the steam roller to the town, and which described the agreement in various places as a contract, was a contract for the conditional sale of the roller, and not a lease with an option to continue it in force.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1327–1331; Dec. Dig. § 456.*]

2. TOWNS (§ 46*)—CONTRACTS—POWERS OF TOWN SUPERINTENDENT OF HIGHWAYS.

Under Highway Law (Consol. Laws 1909, c. 25) § 49, authorizing the town superintendent with the approval of the town board to purchase stone crushers, steam rollers, etc., subject to the limitations prescribed in section 94, to be paid for from moneys levied and collected or from the proceeds of·bonds issued and sold as provided in that law, section 94, subd. 3, providing that not more than $500 shall be levied and collected in one year for the purchase or repair of stone crushers, steam·rollers, etc., unless authorized by a vote of a town meeting, and section 90 requiring the town superintendent to make a written statement of the amount of money which should be raised by tax, among other purposes,. for the purchase, repair, and custody of stone crushers, steam rollers, etc., the town superintendent can purchase a steam roller only from funds furnished by the town and immediately available for that purpose, and hence could not contract for its purchase to be paid for by payments extending over five years.

[Ed. Note.—For other cases, see Towns, Cent. Dig. §§ 81–84; Dec. Dig. § 46.*]

3. TOWNS (§ 37*)—CONTRACTS—POWERS OF TOWN SUPERINTENDENT OF HIGHWAYS.

A contract between a steam roller company and a town, by which the company agreed to lease a roller to the town at the rate of $10 a day, the town agreeing to use it not less than 64 days in a year, and providing that it should automatically continue in force for the·4 succeeding years, unless terminated by notice given by the town superintendent on or before February 1st of each year, that, if so continued, it would be used in each year at least 64 days at the same rate, and that, on payment of the rental for the full 5 years, the company would sell the roller to the town for the consideration of $1 and the rental payments,

---

was not authorized by Highway Law (Consol. Laws 1909, c. 25) § 50, authorizing town superintendents to hire stone crushers and steam rollers at not to exceed $10 for each day the stone crusher or steam roller is actually used upon the highways, since it was plainly an attempt to indirectly purchase the steam roller contrary to statutory limitations upon the superintendent's power to purchase, especially as under Highway Law, § 101, the fund from which the expense of leasing or hiring the steam roller would be paid is made up in part by contributions from the state.

[Ed. Note.—For other cases, see Towns, Cent. Dig. §§ 70, 71; Dec. Dig. § 37.*]

4. TOWNS (§ 37*)—CONTRACTS—POWERS OF TOWN SUPERINTENDENT OF HIGHWAYS.

Even if treated as a lease, such agreement was invalid because it provided for a fixed term of user in advance of any determination that such term would be required by the necessities of the town contrary to the provision of section 50 that the compensation shall not exceed $10 for each day that the steam roller is actually used.

[Ed. Note.—For other cases, see Towns, Cent. Dig. §§ 70, 71; Dec. Dig. § 37.*]

5. TOWNS (§ 38*)—CONTRACTS—POWERS OF TOWN SUPERINTENDENT OF HIGHWAYS.

Such agreement was also invalid because of the provision for its automatic renewal without affirmative action by the town officers, since an obligation against a town by way of contract cannot be created by the omission of action by the town officials, but must be the result of affirmative action.

[Ed. Note.—For other cases, see Towns, Cent. Dig. § 72; Dec. Dig. § 38.*]

Appeal from Trial Term, Stuben County.

Taxpayers' action by Jerry L. Gardner and another against the Town of Cameron and others. From a judgment in favor of plaintiffs (74 Misc. Rep. 286, 131 N. Y. Supp. 894), defendants appeal. Affirmed.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, and LAMBERT, JJ.

Edward R. O'Malley, of Buffalo, for appellants.
James O. Sebring, of Corning, for respondents.

LAMBERT, J. [1] This is an action brought by taxpayers under the provisions of section 51 of the General Municipal Law (Consol. Laws 1909, c. 24) to restrain the defendants from committing waste of the public funds. On the 4th day of February, 1911, the Buffalo Steam Roller Company entered into a written agreement with the defendants, by the terms of which the said company, as party of the first part, "leases to the party of the second part at the rate of $10.00 per day, one Buffalo Pitts Steam Roller with double engine," and the party of the second part agreed "to rent and use said roller for a period of not less than sixty-four days in the year 1911, making rental payments during the working season as the roller is used," but that all payments

for that year were to be made before the 1st day of November. It was then provided that:

"The continuance of this lease is optional each year with the town superintendent, but if this lease is not to be continued for another year then the party of the second part agrees to notify the party of the first part in writing on or before February 1st, of each year, and the failure of the party of the second part to so notify the party of the first part shall constitute an understanding between the parties of this contract that the said lease is to be continued for another year and payments made as hereinbefore provided."

It is then provided that, in the event of the second party not giving this notice in writing from year to year, said party of the "second part agrees to rent and use said roller for the number of days each year hereafter provided at the rate of $10.00 per day, and the payments for each year are to be made as the roller is used and fully paid on or before October 31st." This agreement then provides for the use of the machine for not less than 64 days in each year of the four succeeding years, and that upon—

"the completion of the last mentioned rental payment provided that said second party shall have well and truly kept all covenants and agreements herein made by it, and shall have used said roller as herein agreed and shall have paid in full the rental thereof; then and in that case, for the consideration of one dollar and the rental payments herein mentioned, the party of the first part agrees to sell to the party of the second part the above mentioned steam roller clear and free from all incumbrances."

It is further provided that, in case the highway fund is insufficient to fully pay for the number of days above mentioned at the rental per diem as stated, the difference is to be paid out of any other fund available for such purpose. It is also provided that the machine shall remain the property of the Roller Company during the term of the lease, and that such Roller Company shall keep it in repair, in so far as defects in material and workmanship or the ordinary wear upon the machine. It is then agreed that, in case of default in the payment of rentals, the Roller Company may repossess itself of the machine.

It is apparent from this brief synopsis of the contents of this agreement that the minds of the parties met upon a contract extending over a period of five years; for, while the language is that the "continuance of this lease is optional each year with the town superintendent," the contract itself provides that it is to continue during the five years, unless the party of the second part shall notify the party of the first part in writing "on or before February 1st, of each year, and the failure of the party of the second part to so notify the party of the first part shall constitute an understanding between the parties of this contract that the said lease is to be continued for another year and payments made as heretofore provided." While the agreement refers to a "lease," it is to be observed that the instrument is described as "this contract made and executed by and between the Buffalo Steam Roller Company," etc., and that it provides what shall be understood as constituting an understanding between "the parties of this contract," and it is further provided that "this lease is subject to the acceptance and approval of the party of the first part at the home office,

and when so approved and is accepted is a binding contract," and all the terms and conditions are prescribed for a period of five years, subject only to the option of the party of the second part to terminate the contract at the end of each year by an affirmative act. To call this an "option to continue the lease" is mere jugglery. It is an option to terminate the contract after the payment of each installment of $640, and, unless the party of the second part takes affirmative action, the contract continues in force by its terms. The contract is, in effect, an express agreement on the part of the Buffalo Steam Roller Company for the consideration of $1 and the rental payments mentioned herein to "sell to the party of the second part the above mentioned steam roller, clear and free of all incumbrances, within five years," and an implied promise by the town to pay therefor in the manner provided, unless notice to the contrary is given on or before February 1st in any year during the five ensuing years.

[2] Having reached the conclusion that the instrument in question is a conditional contract of purchase and sale, it becomes important to ascertain whether in making and executing the same the town superintendent transcended his powers. Section 49 of the Highway Law (Consol. Laws 1909, c. 25) provides that:

The "town superintendent may, with the approval of the town board, purchase for the use of the town, stone crushers, steam rollers, traction engines, road machines for grading and scraping, tools and other implements, subject to the limitations prescribed in section ninety-four, which shall be paid for from moneys levied and collected or from the proceeds of bonds issued and sold for such purpose as provided in this chapter."

The limitations prescribed by section 94 of the Highway Law (subdivision 3) are that:

"Not more than five hundred dollars shall be levied and collected in any one year in any town for the purchase or repair of stone crushers, steam rollers, traction engines or road machines for grading and scraping, tools and implements, unless duly authorized by a vote of a town meeting."

Section 95 of the same statute provides for submitting a proposition to the town meeting for the above purposes. It should be observed that the only method pointed out by the statute for the purchase of steam rollers, etc., requires that the purchase shall be "paid for from moneys levied and collected, or from the proceeds of bonds issued and sold for such purposes as provided in this chapter." That is, the payments are to be made from the funds procured through the direct taxation of the inhabitants of the town, out of the funds of the town secured immediately from taxation, or by means of bond issues, and not more than $500 of the funds of the town are available for the purpose of purchasing steam rollers, unless by reason of a vote of a town meeting upon a proposition submitted for the purpose.

I have been particular to call attention to these limitations upon the power to purchase, because it shows clearly that the statute did not contemplate the purchase of steam rollers except upon the condition that the money was provided from and by the town, and was immediately available for such purpose. Section 90 of the Highway Law provides that the town superintendent shall annually, on or before the

31st day of October, make a written statement in respect to the amount of money which should be raised by taxing the town for the ensuing year, and this statement is required to specify (3) "the amount of money necessary to be levied and collected for the purchase, repair and custody of stone crushers, steam rollers," etc., and section 94 of the same statute provides for the levying of such taxes as are finally found to be necessary for these purposes, including a provision where a proposition has been voted at a town meeting. Subdivision 3. So that there is absolutely no authority to be found in the Highway Law which deals with the question of the purchase of a steam roller except from the funds furnished by the town in cash or funds immediately available for that purpose. Under such circumstances, there could be no possible justification for contracting to purchase five years hence, and this authority is not therefore incidental to the power to purchase machinery, such as is to be found in the statute. The statute having pointed out the one and only method of purchasing steam rollers out of the funds raised by taxation from the town, all other power of purchase is excluded under the maxim, "Expressio unius est exclusio alterius." Aultman & Taylor Co. v. Syme, 163 N. Y. 54, 57, 57 N. E. 168, 79 Am. St. Rep. 565.

[3] It is, however, the very fact of this limitation upon the purchasing power of the defendants that gives rise to the present controversy. It is apparent that the parties to the contract now under consideration understood that the town of Cameron had no power to purchase the steam roller in question under the circumstances then existing, but it was discovered that section 50 of the Highway Law provided that the "town superintendent may, with the approval of the district or county superintendent, lease or hire stone crushers, steam rollers and traction engines at a rate to be approved by the town board, which shall not exceed ten dollars for a stone crusher and steam roller, and eight dollars for a traction engine, for each day such stone crusher, steam roller or traction engine is actually used upon the highways," and so it was sought to accomplish indirectly what could not be done directly, an effort which is always defeated when it comes properly before the court. Matter of Henneberger, 25 App. Div. 164, 169, 49 N. Y. Supp. 230, affirmed 155 N. Y. 420, 50 N. E. 61, 42 L. R. A. 132. It was thought that by calling this conditional contract a lease, and providing for an arbitrary number of days of use in each of five years, and giving an option to purchase for $1 and the rentals, the law could be dodged, and that the town of Cameron could get the advantage of the further provision of section 50 of the Highway Law that the expense of leasing or hiring a steam roller "shall be paid by the supervisor, upon the written order of the town superintendent, out of moneys received by him, as provided in this chapter, for the repair and improvement of highways." By a reference to section 101 of the Highway Law, it will be seen that the fund from which the expense of leasing or hiring a steam roller is to be paid is made up in some instances of a contribution of 50 per cent. from the state and in varying amounts drawn to 25 per cent., and herein is the particular vice of this transaction. The project is to buy property

which shall be owned by the town and compel the people of the state by a fraudulent perversion of the statute to contribute from 25 to 50 per cent. of the cost thereof.

Measuring this contract by the test of the obligations imposed thereby, it clearly contravenes the statute. By its terms a continuing obligation is imposed upon the town to use the roller for a term of five years, and to pay in total rental the sum of $3,200 therefor. It is true, as before said, that an option is reserved to the town superintendent to terminate it by affirmative action to that end, but in the first instance its obligations lead inevitably to a purchase. Then follows the agreement by the Roller Company to transfer the title upon the payment of the nominal consideration of $1. This provision was doubtless inserted as a means to avoid the contention that the contract lead to an acquisition of the title by the town. But that additional consideration is only nominal, and, being so evidently intended to subvert plain statutory requirements, it may be safely disregarded. The real consideration for the title of the machine is the $3,200 of the rentals agreed to be paid, and the provision for the payment of $1 may properly be regarded as a subterfuge, and a pretext to give color to the pretense of leasing.

The law requires the exercise of good faith in the making and performance of contracts. "No covenant of immunity can be drawn that will protect a person who acts in bad faith, because such a stipulation is against public policy and the courts will not enforce it." Industrial & General Trust, Ltd., v. Tod, 180 N. Y. 215, 73 N. E. 7.

The option to terminate the contract under consideration at the end of a year does not aid the appellant. Town credit or town moneys cannot be lawfully pledged or disbursed, based upon a passive attitude of town officers, and consequently omission of official action is unavailing to sustain a contract of this character. By its plain terms this instrument, whether called a lease or a contract, creates an obligation upon the part of the town to rent this machine for five consecutive years, and to pay in rentals during that time the full purchase price thereof, and it provides for the transition of title at the expiration of such term. It is therefore in substance and effect a conditional contract of purchase and sale. Jacobs v. Haefelien, 54 App. Div. 570, 66 N. Y. Supp. 1007. This contract upon its face bears the evidence of having been drawn for the purpose of subverting the declared policy of the state, and of imposing burdens upon the public fund for the benefit of particular communities, and the courts ought not to hesitate to condemn it, and to prevent this unjust raiding of the treasury by private interests. If this contract was carried out, it would result in the town of Cameron purchasing a machine in a manner directly in conflict with the only power that has been given for the purchase of such a machine, and the imposition of a burden upon the taxpayers of this state for which there is no warrant in law.

[4] In my opinion there are other phases of this contract which in legal effect are fatal to the contention of the appellant. Referring again to section 50 of the Highway Law, it will be observed that permission is there given to the town superintendent to lease or hire a steam roller at a price to be approved by the town board which "shall

not exceed $10.00 for each day such steam roller is actually used upon the highways." The contract under consideration purports to create an absolute obligation against the town to use such steam roller 64 days every year for 5 years, and to pay therefor at the rate of $10 per day. The quantum of the rental is within the limit fixed by the statute for each day of actual use, but vice is inherent in the obligation created upon the town to actually use the roller 64 days in the year. The fixing of this term for actual use could only be made, in advance, upon an estimate of the requirements of the town during such year. It is provided by section 47 of the Highway Law that the town superintendent, the party making this contract, is vested with the control of the highways of a town, and, primarily at least, he has the power to direct what work should be done, and is limited only by the estimate of expenditures required to be made by section 90 and upon which the appropriation by the town board for highway moneys is based. This authority and discretion vested in him, however, is required to be exercised in accordance with the necessities of the town, and he has not the right to arbitrarily or in a wasteful or negligent manner expend town moneys for any such purpose.

I read section 50 to prohibit the payment of rentals for a road roller upon any other basis than that of actual user, and, if I am correct in this, then this contract offends section 50, in that it provides for a fixed term of user in advance of any possible determination that such a term would be required by the necessities of the town. If through weather conditions or for other reasons there was an actual user for a shorter period than 64 days, it could not be seriously contended that an expenditure by the town superintendent of the rental for the full 64 days would be a valid outlay of the town moneys under the provisions of section 50 of the Highway Law, and yet this contract so provides. It is so worded that the user for the full term agreed upon is of the essence of the contract, and it is incapable of construction as meaning that the obligation of the town is only to pay for such number of days as the roller is actually used. While the obligation to pay in and of itself is at the rate of $10 per day, yet coupled with the agreement of 64 days it makes an absolute contract to pay $640 per year rental, and in this respect contravenes the statutory requirements that the rental shall be upon the basis of actual and necessary use.

[5] There is another phase of this contract that I regard as equally fatal to its validity. That is the provision for its automatic renewal year by year without affirmative action by succeeding town officers. The same reasoning which condemns a contract for a specific term condemns it in this particular. The necessities of the town in the repair and maintenance of its highways cannot definitely be foreseen for a term of years in advance, and in my judgment the permission to lease upon the basis of actual user was never designed to permit the creation of a continuing obligation to lease year after year.

It is unavailing, in this connection, to say that an option is reserved to the town superintendent to terminate the lease at the end of any one year. The exercise of such an option requires affirmative action by such officer, and, in the absence of such action, the obligation is continued. Public funds are not to be expended upon any such basis. Mere

oversight or negligence on the part of the officer making such contract, or his successor in office, might operate to prevent the service of the notice within the time prescribed by the contract, even though the town officials had determined not to continue the same. The creation of an obligation against the town, by way of contract, cannot be founded upon omission of action by the town officials but must be the result of an affirmative determination to create the obligation in the form and manner provided by statute.

Having reached the conclusion that the contract in suit is void as matter of law, it is unnecessary to consider the exceptions taken to the admission of evidence on the issue of fraud. The cases of Rogers v. O'Brien, 153 N. Y. 357, 47 N. E. 456, Rogers v. Board of Supervisors, 77 App. Div. 501, 78 N. Y. Supp. 1081, and Queen County Water Co. v. Monroe, 83 App. Div. 105, 82 N. Y. Supp. 610, are ample authority for the maintenance of this action by the plaintiffs as taxpayers, and they have a clear right to the judgment which has been awarded them

The judgment should be affirmed, with costs. All concur.