AMERICAN UNION LINE, INC., Respondent, *v.* ORIENTAL NAVI-
GATION CORPORATION, Appellant.

First Department, May 2, 1924.

Sales — action to recover down payment under contract to purchase
steamship — contract exempted parties from liability if failure to
perform was caused by restraints or acts of governments or to cause
beyond control of parties — United States Shipping Board and War
Trade Board refused to consent to transfer because stock of plaintiff
was held in escrow for Danish corporation as security — plaintiff could
have removed cause for restraint — failure to perform not within
exemption provision — complaint is insufficient — pleadings — defend-
ant may have judgment dismissing complaint and proceed to trial on
issues joined on counterclaim under Civil Practice Act, § 476.

The complaint in an action to recover the down payment made under a contract
for the sale of a steamship in February, 1918, does not state facts sufficient to
constitute a cause of action, where it appears that the plaintiff relies on a
provision in the contract that failure to perform owing to restraints or acts of
governments or impossibility of performance due to such causes shall relieve
the parties from liability for failure to perform and entitle the plaintiff to
recover any sums paid down, since it appears that the failure of the defend-
ant to perform was due to the refusal of the United States Shipping Board
and the War Trade Board to permit the transfer so long as the stock of the
plaintiff was held in escrow as security for the payment of a claim in favor of a
Danish corporation against the plaintiff, which plaintiff could have paid, releas-
ing the stock, and since it further appears that alleged impossibility of perform-
ance was not such but merely hardship due to exorbitant demands of a third
person, this court now accepting the law of the case as determined on a prior
appeal. It was possible for the plaintiff to remove the cause for the refusal to
permit the transfer and it was its duty to do so, and it cannot, therefore, rely
upon said provision in the contract to relieve it from liability and authorize it
to recover the down payment.

Inasmuch as the complaint does not state a cause of action, the defendant is
entitled to an order under section 476 of the Civil Practice Act dismissing the
complaint and directing that the issues joined by a reply to the counterclaims
proceed to trial.

APPEAL by the defendant, Oriental Navigation Corporation,
from so much of an order of the Supreme Court, made at the
New York Special Term and entered in the office of the clerk of
the county of New York on the 5th day of April, 1923, as denies
its cross-motion for judgment on the pleadings dismissing the
complaint.

*Duncan & Mount [Herman S. Hertwig* of counsel; *Russell T.
Mount* with him on the brief], for the appellant.

*Butler, Wyckoff & Campbell [Frederick B. Campbell* of counsel],
for the respondent.

Martin, J.:

This action is brought to recover the sum of $50,000 paid by the plaintiff on account of the purchase price of the steamship *Fair Oaks*. The payment was made in February, 1918, at the time of the execution of a contract for the purchase of that vessel from the defendant. The stipulated price was $185,000. The sum of $135,000 was to be paid on delivery after the completion of certain voyages to which she was committed when the contract to sell was executed. Delivery should accordingly have taken place in September, 1918. By that time, however, the transfer of the vessel to the plaintiff was prevented by orders of the United States Shipping Board and of the War Trade Board.

The contract provided:

" 7. Neither party to this contract shall become liable to the other in any manner whatsoever for failure to perform this contract owing to perils of the seas or of navigation, arrests, restraints or acts of princes, rulers, governments or people, or owing to any other cause beyond the control of any such party. Provided, however, that in the event that this contract shall be or become impossible of performance owing to the causes hereinabove mentioned or any of them, the sums paid to the vendor by the purchaser shall be forthwith repaid to the purchaser by the vendor without interest."

Under the Shipping Act of 1916, as amended, and war legislation in force during the entire period of the contract, the approval of said boards was necessary to a transfer of the vessel. Their refusal to consent was due to the discovery in May, 1918, during the existence of the contract, of the status of the plaintiff's capital stock. At that time it was discovered that, for a period beginning some eight months prior to the making of the contract for the purchase of defendant's vessel, plaintiff's capital stock had been in the possession of Joseph G. Engel, an attorney of New York city, under an escrow agreement, between the Interchange, Ltd., a Danish corporation, and Isaac Shapiro, an American citizen, providing that it should so remain until an amount owing by the plaintiff to the Danish corporation had been jointly certified and paid, at which time the stock was to be delivered to Shapiro.

There was a disagreement between the Danish corporation and the plaintiff with reference to the amount due and they became deadlocked on this issue in June, 1917, many months before the contract involved in this suit was made. It is not asserted that this situation, important as its bearing was on plaintiff's contract with defendant, was disclosed either to the defendant or to the government at or prior to the making of the contract. It was

not disclosed until investigation by representatives of the United States government brought it to light.

A detailed statement of the facts, relative to Federal bureaus and statutes, will be found in the opinion of Mr. Justice Greenbaum, on a prior appeal, reported in 199 Appellate Division, 513.

In the month following such discovery and order by the government boards, the plaintiff brought an equity suit in the Federal court in Brooklyn to have the controversy between it and the Interchange, Ltd., adjudicated. It is alleged that the boards had " orally notified plaintiff and said Shapiro that no consent would be given until said Shapiro's right to the ownership of plaintiff's capital stock had been duly adjudicated by a court of competent jurisdiction." When the time arrived in September for the completion of the sale of the vessel, this suit was pending undetermined and the final decree was not entered therein until the following January. The difficulty between the plaintiff and the Interchange, Ltd., was a difference as to the amount due from the plaintiff to the Interchange, Ltd., resulting in the refusal of the plaintiff to pay the amount the Interchange, Ltd., asserted to be due.

When the time for completing the sale arrived, the plaintiff, notwithstanding the existence of an order of the governmental boards, demanded the vessel from the defendant; but the defendant declined to deliver it in violation of the official orders. Plaintiff immediate'y commenced this suit to recover $185,000 damages, on the theory that defendant by withholding delivery had wrongfully broken the contract, and this demand for damages was subsequently increased by amendment to $215,000.

After the determination of the prior appeal, plaintiff served the third amended complaint which, with the answer thereto, is now before us.

Considering the allegations tending to show impossibility of performance within the meaning of the 7th clause of the contract as construed in the opinion of Mr. Justice Greenbaum, which is now the law of the case, we find that in this complaint, paragraph " tenth," it is alleged that " said Isaac Shapiro made every possible effort to procure" a certain certified statement, referred to in the agreement by which the stock of the plaintiff was put in escrow with Engel, and which statement, according to said agreement, was to definitely fix the amount to be paid by plaintiff to the Interchange, Ltd.; that said statement was to be furnished by one Landgraft who sailed for Stockholm without preparing it; that the statement was demanded repeatedly by Shapiro, who " expressed a willingness to co-operate in every possible way in the preparation of such statement," and that the Interchange, Ltd., refused to certify any statement of

account between it and plaintiff, though plaintiff and Shapiro were at all times ready and willing and offered to pay any proper balance; that the Interchange, Ltd., demanded $100,000 which amount was not due and which plaintiff and Shapiro declined to pay. In paragraph " twelfth " it is alleged that the Federal authorities " orally declined to commit themselves in advance by indicating the terms upon which they   *   *   *   would later consent to the transfer " of the vessel.   Thereupon, and on June 5, 1918, as alleged in paragraph " thirteenth," Shapiro brought suit against the Interchange, Ltd., in the United States District Court in Brooklyn, plaintiff being subsequently made a party; that the time for delivery of the vessels did not arrive until September, 1918; that every possible effort was made to secure a judgment in said suit prior to the time for performance of the contract for the purchase of the *Fair Oaks*, but the suit was not determined until some months after the time of delivery; that the final judgment required the stock to be delivered to plaintiff on payment of $1,702; that the accounts between the two parties ran into several hundred thousand dollars; that the balance could not be determined until a judicial settlement; and that the costs in the action were assessed against the Interchange, Ltd., leaving $52.51 to be paid to it.   In the " fourteenth " paragraph it is alleged that, while the suit was pending in the United States court in Brooklyn, plaintiff made every effort possible at Washington with the Federal authorities to obtain consent to the transfer of the *Fair Oaks* to plaintiff and continued these efforts down to the last day for the delivery of the *Fair Oaks* under the contract.

It was held at Special Term, and we agree, especially in view of what was determined on the prior appeal, that the third amended complaint does not show that plaintiff is entitled to recover by virtue of the 7th clause of the contract quoted above.   Plaintiff had deliberately entered into a dangerous situation from which its escape was conditioned on the amount of its debt being fixed, by agreement or otherwise, and the indebtedness being paid.   It retained the power to remove the bar to obtain a transfer of the vessel.   However disagreeable it may have been to comply with the demands of the Interchange, Ltd., it cannot be said that its inability to take the vessel was due to a cause beyond its control. It could not rely upon impossibility of performance when all it had to do was to pay the Interchange, Ltd., in order to have its stock transferred to Shapiro and thus meet the requirements imposed by the United States authorities as a condition to their consenting to the *Fair Oaks* being transferred.

On the first appeal Mr. Justice GREENBAUM said (199 App. Div.

513, 523): "To entitle the plaintiff to recover it was incumbent upon it to allege and establish that its failure to perform the contract was due to one or more of the causes mentioned in paragraph '7' of the contract between the parties and that it was 'beyond its control' or power to do anything which would entitle plaintiff to purchase the vessel in question."

At page 524 he further said: " Plaintiff's contention that it was defendant's duty to obtain the consent is preposterous. What could defendant have done to secure the government's approval of the transfer? Plaintiff itself allowed a condition to continue which prevented the plaintiff from being put under the control of American citizens and the duty devolved upon Shapiro and plaintiff to resort to every possible lawful means to bring the plaintiff corporation under such control.

" A provisional restraint on the part of the government does not establish that it was impossible for plaintiff to comply with the government's conditions. Shapiro might have settled his differences with the Interchange, Ltd., by paying a sum, even if exorbitant, which would have made it possible to obtain the stock of the plaintiff corporation and to perform its contract. The right to cancellation rests upon ' impossibility ' to perform and not upon hardship upon the plaintiff."

We now come to the question whether this complaint may be dismissed and the action permitted to proceed to trial on the issues growing out of the counterclaims and the reply. Defendant appeals from so much of the order as denied its cross-motion, " for judgment on the pleadings dismissing the complaint."

Denying this motion, the court at Special Term said: " Defendant's motion for judgment on the pleadings must also be denied, because no judgment could be directed which would dispose of all the issues in the present state of the record. (*Sayre* v. *Progressive C. & L. Co.*, 159 App. Div. 799.) "

This opinion was handed down on April 5, 1923. The following day this court handed down its decision and opinion in *Koppel Industrial C. & E. Co.* v. *Portalis & Co.* (205 App. Div. 144). That was an appeal from an order made at Special Term denying a motion to dismiss for insufficiency one cause of action set forth in a complaint. This court held that such a motion is authorized under section 476 of the Civil Practice Act; that there may be a dismissal of one cause of action without a severance; and that such a dismissal may rest upon the order granting it until final judgment determining all the issues is properly entered.

The opinion, in part, in that case is as follows: " Respondent contends that a motion for judgment on the pleadings after issue

joined can be granted only where a final judgment disposing of all the issues can be entered upon the motion. The authorities upon which he relies (*Stevenson* v. *Devins*, 158 App. Div. 616; *Sayre* v. *Progressive Construction & Leasing Co.*, 159 id. 799) were cases in which the plaintiff moved for judgment dismissing counterclaims in answers which also contained denials of material allegations of the complaint. Under such circumstances no judgment could be entered. We have frequently had occasion to point out that ' the object of the Civil Practice Act and the Rules of Civil Practice was to simplify the practice, do away with many technical requirements, and avoid unnecessary and vexatious delays' (*Feizi* v. *Second Russian Ins. Co.*, 199 App. Div. 775), and also to simplify issues to be tried, by eliminating before trial causes of action which are insufficient, or defenses without merit. This latter purpose is disclosed by providing not alone for motions where the defect appears upon the face of the pleading (Rules Civ. Prac., rules 106, 109), but also that where the defect does not appear upon the face of the pleading, a motion may be made, upon the pleading and an affidavit tending to show vital defects, for a dismissal of the complaint or of one or more causes of actions stated therein, or for a dismissal of a counterclaim stated in an answer (Rules Civ. Prac., rules 107, 108, 110), also for striking out a reply or a separate defense therein (Rules Civ. Prac., rule 111); also for summary judgment (Rules Civ. Prac., rule 113) upon which a partial judgment may be entered (Rules Civ. Prac., rule 114), as well as for judgment on the pleadings after issue joined (Rules Civ. Prac., rule 112). Section 476 of the Civil Practice Act provides: ' Judgment may be rendered by the court in favor of any party or parties, and against any party or parties, at any stage of an action or appeal, if warranted by the pleadings or the admissions of a party or parties; and a judgment may be rendered by the court as to a part of a cause of action and the action proceed as to the remaining issues, as justice may require.' "

There appears to be no reason why in a proper case, an insufficient complaint should not be dismissed by order, and the issues joined by a reply to counterclaims proceed to trial.

The order appealed from to this extent should be reversed, with ten dollars costs and disbursements, and the defendant's motion to dismiss the complaint granted, with ten dollars costs, and in other respects the order should be affirmed.

CLARKE, P. J., MERRELL and FINCH, JJ., concur.

Order so far as appealed from reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.