Daniel J. McAvoy, J.
This was a motion by the plaintiff for leave to reargue its motion to strike from defendant’s answer the general denial and counterclaim therein alleged, and for judgment on the pleadings, pursuant to rule 112 of the Rules of Civil Practice, j The motion for leave to reargue was granted and the reargument was heard on July 26,1963 before a Special Term of this court.
Plaintiff in its complaint had alleged a cause of action for moneys due under a written instrument designated as an “ Agreement of Lease ”. The agreement had been entered into with the defendant as “ lessee ” and the Waverly Chamber of Commerce, Inc., as “ lessor ” on August 15, 1960. The instrument contained provisions that certain parcels of land located within the defendant village were to be “ leased ” to the village for the purpose of a “ public parking lot ” for a period of 20 years, with the village holding an “ option to purchase parcels at the end of the twenty-year term for the consideration of $1.00 ”, and was assigned by the Waverly Chamber of Commerce, Inc., to the plaintiff. The village failed subsequently to *705 make certain payments of “rent”, the amount of which was set forth in the agreement, and this action was instituted by the plaintiff for recovery thereof. The complaint also contained a claim for unpaid taxes allegedly paid by the plaintiff on the behalf of the defendant village.
This court, in a decision dated April 22, 1963 granted plaintiff’s motion to strike certain affirmative defenses contained in defendant’s answer. The basis for the motion to reargue rests in this court’s denial of plaintiff’s motion to strike the general denial and dismiss the counterclaim contained in defendant’s answer, and the denial of plaintiff’s motion for judgment on the pleadings under rule 112. This court had written in the above decision that the determination of whether the instrument was a lease agreement or a purchase agreement of the premises could not be gleaned from the language of the instrument, but rather rested upon the intent of the parties which was determinable only by extrinsic facts.
The plaintiff, upon reargument for the granting of the remedies set forth in its motion, has urged that this court must construe the instrument as a lease agreement or as a purchase agreement of the premises as a matter of law, and that in either event, the contract is a legal contract under the laws of New York.
Upon a reconsideration of the motion, it is the opinion of this court that the question as to whether it was the intention of the parties to create an instrument of lease or a purchase agreement of the premises must be construed as a matter of law from the four corners of the instrument. (Matter of Loew’s Buffalo Theatres, 233 N. Y. 495, 501; Buell v. Kresge Co., 177 Misc. 686, affd. 263 App. Div. 931; Oxford Commercial Corp. v. Landau, 12 N Y 2d 362.)
Although the parties labeled this agreement a lease, this alone does not establish the existence of one. As the Supreme Court of the United States has written: “What, then, is the true construction of the contract? The answer to this question is not to be found in any name which the parties may have given to the instrument, not alone in any particular provisions it contains, disconnected from all others, but in the ruling intention of the parties, gathered from all of the language they have used. It is the legal effect of the whole which is to be sought for. The form of the instrument is of little account.” (Hergford v. Davis, 102 U. S. 235, 243-244.)
Since, clearly, substance of the agreement must prevail over the form (Heller v. Pope, 250 N. Y. 132, 135), a careful study of the language of this agreement reveals an intention by the *706 parties to create a purchase agreement of the premises, though titled a lease. Clause Eight of the contract states: “ Upon the expiration of the term of this lease, if the lessee has fully complied with all the terms and conditions hereof, it shall have the option to purchase the premises described in Exhibit A and in addition, the Lee Hotel-Huckle Peckally premises for the sum of $1.00 ’ ’. The language contained in this option in no uncertain terms creates a compulsory exercise of the option to purchase the premises by the village.
By no stretch of the imagination can this court conceive of the village not exercising the option for this nominal amount. The inescapable conclusion reached is that the consideration of $1 stated therein is no reflection of the reasonable value of the property. In short, then, the property was to pass automatically upon the completion of the payment of the so-called rentals at the end of 20 years. This entire arrangement was nothing more than a means of financing the purchase of the premises by paying monthly installments for 20 years, at the end of which the property was to be deeded to the defendant village. (38 Am. Jur., Municipal Corporations, § 467, p. 149; Ann. 71 A. L. R. 1318, 1326 [1931]; Ann. 145 A. L. R. 1362, 1367 [1943].)
“ The lease agreement has its best, if not only, chance of survival where the rentals are reasonable compensations for use, where the option is truly non-compulsory upon the municipal corporation, and where the amount at which the option is to be exercised is approximately the reasonable value of the property at that time, not a dollar or other nominal amount * * * where the property is to pas's automatically to the municipal corporation at the end of the term the arrangement is almost certainly a purchase and a debt.” (2 Antieau, Municipal Corporation Law, § 15.19, pp. 407-409.)
Having determined that the instrument is a purchase agreement of the premises by installment payment, it remains to be determined whether the Constitution and the laws of this State sanction such a financing arrangement.
The power of villages to contract is defined and limited by the Constitution and statutes. They possess only those powers expressly conferred or necessarily implied. (Wells v. Town of Salina, 119 N. Y. 280, 287; Scarborough Props. Corp. v. Village of Briarcliff Manor, 278 N. Y. 370.)
The Village Law and the Municipal Law grant to villages the power to purchase properties for the purpose of public parking. (Village Law, § 89, subds. 18-a, 18-b; General Municipal Law, § 72-].) Article VIII of the Constitution provides: “No *707 Indebtedness shall be contracted for longer than the period of probable usefulness of the object or purpose for which such indebtedness is to be contracted, to be determined by or pursuant to general or special laws, which determination shall be conclusive ” (N. Y. Const., art. VIII, § 2). The Local Finance Law is intended to be the sole and exclusive law applicable to local financing. (Local Finance Law, § 176.00.) The Tillage Law makes the exclusive application of the Local Finance Law to village financing abundantly clear. (Tillage Law, § 126, subd. 2.)
There is no authority granted to a village to finance the purchase of property for public parking in the manner attempted here. (Local Finance Law, §§ 10.00, 11.00, 20.00.) None of the provisions of the Local Finance Law establish the method of financing an obligation by a purchase agreement with installment payments. (Local Finance Law, § 20.00.)
The State Comptroller has ruled on similar attempts at financing, which this court feels are a proper interpretation and application of the law. Thus, an attempt to finance the purchase of real property for public parking by a purchase-money mortgage (12 Op. St. Comp. 1956, p. 291) or a land contract (8 Op. St. Comp., 1952, p. 262) or the purchase of property by a fire district on an installment land contract (18 Op. St. Comp., 1962, p. 394) have all been held as not sanctioned by the laws of this State (3 Op. St. Comp., 1947, p. 362). Purchases must be financed according to the Local Finance Law. (5 Op. St. Comp., 1949, p. 173.)
Article Till of the New York Constitution and the provisions of the Local Finance Law are part of the effort to create and maintain fiscal integrity. To allow the agreement in question to stand would be a clear evasion of the Constitution and statutes of this State. Such methods of evasion are not uncommon throughout the country and the weight of authority strikes these agreements down. (Baltimore & Ohio Southwestern R. R. Co. v. People, 200 111. 541; Jones v. Rutherford, 225 Ky. 773; Boardman Co. v. Board of Commrs. of Pontotoc County, 116 F. 2d 249; 405 Monroe Corp. v. City of Asbury Park, 70 N. J. Super. 293; 38 Am. Jur., Municipal Corporations, § 467, p. 149; Ann. 71 A. L. R. 1318, 1326 [1931]; Ann. 145 A. L. R. 1362, 1367 [1943].)
McQuillin states the entire matter succinctly: ‘ ‘ Attempts to evade debt-limitation provisions by subterfuge are universally frowned upon, and it has been said that ‘ arguments of convenience, of policy, or of present necessity, should not be allowed, by loose construction, to weaken the force or limit the *708 extent ’ of such provisions. Thus debt-limit provisions generally may not be evaded by indirect methods, such as by taking a lease instead of purchasing ” (15 McQuillin, Municipal Corporations, § 41.15, pp. 330, 331).
The law of New York, though not recently enunciated, sustains this position. In Gardner v. Town of Cameron (155 App. Div. 750, affd. 215 N. Y. 682) a contract was drawn between a steam-roller company and a town, by which the town ‘ ‘ leased ’ ’ a machine for $10 a day for stipulated periods each year, with an automatic renewal of the contract for four succeeding years unless the town notified the company otherwise. At the end of the five-year term, the machine could be purchased at the option of the town for $1. The court construed the agreement to be a conditional sales contract and not a lease and wrote (pp. 755-757): “It was thought that by calling this conditional contract a lease, and providing for an arbitrary number of days of use in each of five years, and giving an option to purchase for one dollar and the rentals, the law could be dodged * * * If this contract was carried out it would result in the town of Cameron purchasing a machine in a manner directly in conflict with the only power that has been given for the purchase of such p machine, and for the imposition of a burden upon the taxpayers of this State for which there is no warrant in law.” (See, also, Shoemaker v. Buffalo Steam Roller Co., 165 App. Div. 836.)
This court is of the opinion that this contract is void under the laws of the State of New York and, therefore, denies the motions of the plaintiff and grants judgment on the pleadings to the defendant, pursuant to the authority granted under rule 112 of the Rules of Civil Practice. (See, also, Zawadsky v. Zawadsky, 169 Misc. 404; Wolk v. Royal Ind. Co., 27 Misc 2d 478; Matter of City of Jamestown v. Sfetko, 15 A D 2d 403; Beach 102nd St. Realty Corp. v. Ringel, 190 Misc. 199.)
The plaintiff is* given 10 days from the date of the entry of an order herein to file a reply to the defendant’s counterclaim so that the remainder of this action may be continued to trial. (American Union Line v. Oriental Naw. Corp., 209 App. Div. 260, revd. on other grounds 239 N. Y. 207; 5 Carmody-Wait, New York Practice, p. 108.) Submit order in accordance herewith.