Jones, J.
We hold that inasmuch as the Town of North Hempstead did not have the right to attach its street lighting fixtures to utility poles owned by the New York Telephone Company without the company’s permission, the Telephone Company is entitled to an order directing their removal. While the town is not liable to the company for rent for the unauthorized use of the poles, the Telephone Company may recover for any damages it has sustained in consequence of such use.
Under the provisions of section 27 of the Transportation Corporations Law, New York Telephone Company when it was incorporated in 1896 received from the State of New York an unconditional right to erect and maintain poles for its lines upon public streets and highways, including those in the Town of North Hempstead. Pursuant thereto the Telephone Company has erected and now maintains some 3,800 telephone poles throughout the town.
Prior to 1969 the Telephone Company had entered into agreements with Long Island Lighting Company (LILCO) for the joint use by each company of utility poles of both companies, and the town was furnished street lighting by LILCO street light fixtures energized through LILCO electric wires attached to both LILCO and Telephone Company owned poles. On December 31, 1966 the town created a North Hempstead Lighting District, and on July 1, 1969 the town on behalf of that district entered into an agreement with LILCO for the attachment of street lighting fixtures to the utility poles of both LILCO and the Telephone Company. Pursuant to this agreement approximately 73 street lighting attachments were lawfully made to Telephone Company poles.
On July 15, 1969 the Lighting District wrote a letter to the Telephone Company stating that as of August 1, 1969 the town expected to start installing town owned lighting fixtures on the Telephone Company’s poles in place of the then existing LILCO owned fixtures. By that time a revised arrangement had been made between LILCO and the Telephone Company as to the use of Telephone Company poles. Acknowledging that the town accordingly no longer had the right under its agreement with LILCO to attach town fixtures to Telephone Company poles after May 31, 1969, the town requested permission from the Telephone Company to make the *694 planned attachments beginning August 1, 1969. Over the following months negotiations were conducted looking to a mutually acceptable agreement under which the town’s lighting fixtures could be attached to Telephone Company poles. While this matter was under discussion the town and the Lighting District attached electrical fixtures to some 1,010 Telephone Company poles.
When negotiations became stalled, the Telephone Company wrote to the town on July 9, 1971 demanding that all fixtures be removed from its poles by August 15, 1971, adding that "[i]n the event any such street lighting fixtures remain on our poles after said date we will consider the town a tenant and thereby fix rental at the rate of $10 per pole, to which such fixtures are attached, per month, or fraction thereof, as long as such attachments remain”. Nonetheless, the right to enforce removal of the attachments by legal action was expressly reserved.
When the town failed to respond to the letter of July 9 and did not remove the lighting fixtures, the Telephone Company instituted the present action seeking relief of two sorts—rent in the amount of $224,750, plus interest, for use of the telephone poles from August, 1971 through August, 1973, and injunctive relief directing the town to remove all lighting fixtures from Telephone Company poles. The town’s answer set forth, in addition to the customary general denial, several affirmative defenses. While cross motions for summary judgment were pending and before their determination, on December 3, 1974 the town adopted Local Law No. 13 of 1974. That law purported expressly to accord to the town, and to every special district within the town with the consent of the town board, "the right to attach, install, and maintain municipal apparatus, without fee or charge, upon any utility pole constructed, erected, owned, leased, or maintained by a utility company within the Town right-of-way, provided that such attachment, installation, and maintenance does not unreasonably interfere with the right of the utility company or its licensees to use such utility poles for the purposes of its franchise”.
The Appellate Division affirmed an order of Supreme Court which had granted the Telephone Company’s motion for summary judgment on its claim for injunctive relief, but stayed entry of judgment thereon pending trial and determination of the Telephone Company’s claim for rent (as to which claim *695 the court denied the town’s cross motion for summary judgment). Supreme Court directed that in the event the Telephone Company prevailed on its claim for rent, summary judgment granting injunctive relief should not be entered, but that if it did not so prevail, the judgment granting injunctive relief should be entered. The town’s appeal is now before us by permission of the Appellate Division. We reach somewhat different conclusions than did the courts below.
On our analysis the town’s motion for summary judgment dismissing the Telephone Company’s first cause of action for rent should have been granted. On the Telephone Company’s second cause of action for injunctive relief, the stay of entry of judgment attached to the relief granted below should be vacated and the town should be unconditionally ordered to remove all lighting fixtures which have been attached to Telephone Company poles since May 31, 1969. Because the Telephone Company did not appeal we are procedurally precluded from considering whether, as incidental to the injunctive relief sought, the Telephone Company should be afforded an opportunity to establish what damages, if any, were suffered by it in consequence of the unauthorized attachment by the town of its lighting fixtures to the company’s poles.
As to the alleged cause of action for rent we conclude that, as a matter of law, the town cannot be held to have entered into any agreement to pay rent. For the purpose of the town’s present motion for summary judgment we assume that, were the litigants private parties, sufficient evidence is tendered in this record to create a triable issue of fact as to whether, in the circumstances, the town’s failure to remove its lighting fixtures in response to the Telephone Company’s letter of July 9, 1971, or to assert (contrary to the position taken in its letter of July 15, 1969) that it had the right to attach the fixtures without the permission of the Telephone Company, operated to manifest an implied acceptance of the rental arrangement proposed by the Telephone Company. Such a factual issue would be irrelevant in this case however, for, even if it were to be resolved in favor of the Telephone Company, there would not have been created an obligation enforceable against the town to pay the specified or any other rental.
The Town Law requires formal approval by the town board of town contracts and the execution thereof by the town supervisor (Town Law, § 64, subd 6). As our court wrote in Seif *696 v City of Long Beach (286 NY 382, 387 [contract for legal services rendered to the city at the instance of the Mayor]): "Where the Legislature provides that valid contracts may be made only by specified officers or boards and in specified manner, no implied contract to pay for benefits furnished by a person under an agreement which is invalid because it fails to comply with statutory restrictions and inhibitions can create an obligation or liability of the city.” (See, also, Scarborough Props. Corp. v Village of Briarcliff Manor, 278 NY 370, 375-376, 379 [village contract for purchase of sewers and water lines].) The Appellate Division, Fourth Department, has written: "The creation of an obligation against the town, by way of contract, cannot be founded upon omission of action by the town officials, but must be the result of an affirmative determination to create the obligation in the form and manner provided by statute.” (Gardner v Town of Cameron, 155 App Div 750, 759, affd 215 NY 682 [town contract for lease-purchase of steamroller; emphasis added.)
In the present instance no evidence is tendered of the performance of any of the formal prerequisites to the execution of a valid contract on the part of the town to pay rental for the right to attach lighting fixtures to the telephone poles. Consequently, the Telephone Company’s cause of action for rent should be dismissed.
We turn then to the Telephone Company’s second cause of action—for injunctive relief based on the contention that, without the permission of the Telephone Company, the town had no right to attach its lighting fixtures to the company’s poles and now has no right to continue such attachments. The town bases its claim of right on two legal theories. In the first place it contends that such right stems from the reasonable exercise by the town of its police power, even when there was no express authorizing ordinance but certainly in consequence of the enactment of Local Law No. 13 of 1974. In the alternative, it asserts a right of inverse condemnation. We reject both theories.
As to the town’s police power: The Telephone Company acknowledges that the placement and its own use of its telephone poles are subject to reasonable police power regulation. The town cites authorities upholding the right of a municipality to regulate the location of utility poles and the height above the street at which wires must be strung.
The assertion of the right of a municipality to impose *697 restrictions on the use of property by the owner of the property, however, is entirely different in essence from a claim that the municipality may take another’s property for municipal use. In the former instance, for the general welfare the owner is deprived, to a lesser or greater extent, of use to which he might otherwise put his property. The police power justification comes from the general benefit to the municipality from the limitation imposed on the use of private property. In the latter case the objective is direct municipal use of the private property, in effect a transfer of the right to the particular use from the owner to the municipality and thus a taking. It is the latter claim which is involved in this case; what the town seeks is a pro tanto appropriation of the Telephone Company’s poles for the use of the town to mount its street lighting fixtures. We recently had occasion to consider the distinction between the exercise of the police power and an appropriation under the guise of an exercise of the police power (French Investing Co. v City of New York, 39 NY2d 587). The present case affords a clear instance of a taking of private property for the use of the municipality. The elements of an appropriation which we identified in the French case are present in this—an "actual appropriation or taking * * * by * * * governmental occupation”, a "physical invasion of the owner’s property”, and an "assumption by the [town] of the control or management of’ a portion of the owner Telephone Company’s poles (p 595). (Cf. Delaware, Lackawanna & Western R. R. v Morristown, 276 US 182.)
Two cases from other jurisdictions support the position of the Telephone Company in this case. In each the court struck down, as in excess of the municipality’s police power, an ordinance which, inter alia, purported to allow the municipality to use a portion of the utility’s poles for the support of the municipality’s apparatus. (State ex rel. Wisconsin Tel. Co. v City of Sheboygan, 111 Wis 23 [use of the top 30 inches of all poles for city police and fire alarm systems]; State ex rel. Hudson & Middlesex Tel. & Tel. Co. v Township Committee of Twp. of Linden, 80 NJ L 158 [right to place and maintain fire and police wires on utility poles].)
The two cases on which the town chiefly relies do not support the position for which it contends in this case. In Western Union Tel. Co. v Richmond (224 US 160) the Supreme Court of the United States upheld a city ordinance which, inter alia, conditioned the right of telegraph companies *698 to the use of city streets on a reservation by the city of the right to string a limited number of wires on utility poles. It was the contention of the telegraph company that it had received the right to construct, maintain and operate its lines over the post roads of the United States (including the streets of Richmond which were admitted to be such post roads) under an 1866 act of the Congress, and that no city ordinance could impair such right. In major part the city ordinance which was upheld regulated the placement and use of poles by the telegraph company for its own use—the distinguishable aspect of municipal police power to which reference has earlier been made in this opinion. Under Virginia law, notwithstanding the Federal statute, a utility could occupy the streets of a city or town only with municipal consent. As to the reservation for use by the City of Richmond, Mr. Justice Holmes, writing for the court, said, "When the [telegraph company] without the right to exercise the power of eminent domain desires to occupy land belonging to others, prima facie it must submit to their terms. We assume, as we have said, that the city has some interest in the streets that is affected by the presence or by the establishment of conduits or poles. If it demands, as a condition of its assent, as it does in § 6, that positions shall be reserved upon the poles for the city * * * it is within its rights.” (224 US, at p 170.) This case then stands for the proposition that when a municipality grants utilities a franchise or right to erect and maintain utility poles on the public streets it may reserve a right to limited use of such poles for municipal purposes. On two grounds that holding is not pertinent to the case now before us—first, there was no such express reservation in the original grant to the Telephone Company of the right to erect and maintain poles in the public streets and highways of the Town of North Hemp-stead, and second, the grant of such right came from the State of New York and not from the Town of North Hempstead (Transportation Corporations Law, § 27). The assent of the town was in no wise required to authorize the Telephone Company to erect its poles, and thus there was no grant from the town to which a reservation in its favor could have been attached.
In Postal Tel. Cable Co. v City of Chicopee (207 Mass 341), the utility, incident to its activities in interstate commerce, had been granted the right by the Congress to construct and maintain lines along public highways which were post roads. *699 By provision of the Federal statute this congressional franchise was expressly made subject to the right of cities and towns, by ordinance or by law, to make any reasonable local regulations in regard to the exercise of the franchise. The only issue before the Massachusetts court, resolved in favor of the City of Chicopee, was whether the municipal ordinance in which, inter alia, there was a reservation of a right to the city without charge to place its fire alarm, telegraph or other electrical wires on the poles, was "reasonable” within the meaning of the Federal statute. Again the issue was not the same as in our case.
Our conclusion that the Town of North Hempstead may not, under the guise of an exercise of its police power, appropriate the Telephone Company’s poles for the attachment of the town’s street lighting fixtures, extends as well, of course, to Local Law No. 13 of 1974. What is not permitted the municipality is denied whether the town’s claim be asserted with or without the formality of an express ordinance. The obstacle is the absence of municipal power, not some alleged deficiency in the manner of its purported exercise.
As to the town’s right to inverse” condemnation: Even if it were to be thought that a taking municipality could invoke the doctrine of inverse condemnation to justify an intentional appropriation of private property (itself a doubtful proposition), such a rule would be unavailing to the Town of North Hempstead in this instance. The town’s and the Lighting District’s right of condemnation extends only to interests in real property (Town Law, § 215, subd 5; cf. id., § 64, subd 2). The statutory scheme contemplates that acquisition of personal property will be accomplished by purchase or contract.
The town’s argument on this branch of the case is not that it has a right of eminent domain over personal property; its contention is that the right to attach street lighting fixtures to utility poles is an interest in real property which is subject to the power of eminent domain. We disagree.
The town concedes, as it must, that the utility poles themselves are personal property. The town seeks the right to affix further articles of personal property to these poles—in effect to acquire an interest in the poles. The town does not seek to share in the Telephone Company’s right to erect poles; its interest ripens only after the poles have been erected.
Beyond that, the Telephone Company’s right to erect the poles under section 27 of the Transportation Corporations Law *700 has been held to be a license or privilege, not the grant of an interest in or appurtenant to real property (New York Tel. Co. v City of Binghamton, 18 NY2d 152, 162, supplanting statements in earlier cases; cf. Matter of Consolidated Edison Co. v Lindsay, 24 NY2d 309, 318). Every right which may in some way affect real property does not thereby rise to the dignity of an "interest in real property”. That a special franchise may be taxed as if it were an interest in real estate does not alter the reality.
Thus, we conclude that the Town of North Hempstead had and has no right, either under the guise of an exercise of its police power or by way of inverse condemnation, to attach its lighting fixtures to the Telephone Company’s poles. The company prayed for and we hold that it is entitled to an injunction requiring the town to remove all street lighting fixtures and apparatus installed on the poles of the Telephone Company after May 31, 1969. Fixtures installed prior to that date appear to have been attached at a time when LILCO could grant the town such right and the Telephone Company concedes that the pre-May, 1969 installations were lawfully made.
Having determined the rights and remedies of the parties to this litigation we cannot conclude this opinion without recognizing that it would make great economic and practical sense for the town and the Lighting District to attach their street lighting fixtures to the Telephone Company’s poles, rather than to erect new standards, if that can be accomplished without interference with the rights of the Telephone Company and its licensees to use of the existing poles. It is our conclusion that the town does not now have the right to impose any such arrangement on the Telephone Company even if the town were to pay what might be determined to be just compensation therefor. If the parties cannot reach an amicable agreement, recourse may have to be had to relief which may be available at the hands of the State Legislature.
For the reasons stated, the order of the Appellate Division should be modified, with costs, and the case remitted to Supreme Court, Nassau County, for further proceedings in conformity with this opinion.
Chief Judge Breitel and Judges Jasen, Gabrielli, Fuchs-berg and Cooke concur; Judge Wachtler taking no part.
Order modified, with costs, and the case remitted to Supreme Court, Nassau County, for further proceedings in ac *701 cordance with the opinion herein and, as so modified, affirmed. Question certified answered in the negative.